[No. 20550. In Chambers.— December 19, 1889.]

## IN RE THOMAS M. SPENCER, ON HABEAS CORPUS.

DIVORCE — PERMANENT ALIMONY — EARNINGS OF HUSBAND AFTER DIVORCE — SEPARATE PROPERTY.— It seems that the future earnings of the husband after a decree of divorce are neither common nor separate property, and cannot be charged with the payment of permanent alimony by the decree. Separate property is a relative term, which implies the existence of a community, and is limited to property acquired before marriage, or acquired afterward, during the existence of the community, by gift, bequest, devise, or descent. (Per PATERSON, J.)

ID.— CONTEMPT — HABEAS CORPUS.—When an order committing a defendant for contempt for non-payment of alimony is void because of facts which appear upon the face of the record, the matter can be tested upon *habeas corpus*. (Per PATERSON, J.)

APPLICATION for a writ of *habeas corpus.* The facts are stated in the opinion of Mr. Justice Paterson.

*Jordan & Bull,* for Petitioner.

PATERSON, J.—The petitioner is before me on a writ of *habeas corpus.* The question involved is, whether, after a divorce, the husband can be required to devote his earnings to the support of his former wife. On August 25, 1884, a decree of divorce was entered in favor of Josephine M. Spencer, and against petitioner herein, and the court further ordered the defendant, petitioner herein, to pay to plaintiff *as permanent alimony* the sum of fifty dollars per month. The decree also awarded to the plaintiff the household furniture, silverware, and other property in the possession of defendant. The decree was afterward modified so as to allow the plaintiff twenty-five dollars a month, instead of fifty dollars. Petitioner paid the regular monthly allowance down to about the beginning of the year 1887. Since the latter date he has failed to pay anything, and for such failure and neglect was adjudged guilty of contempt of court, and sentenced to be confined in the county jail until he should pay the amount due his former wife under the decree and order amending the same as to alimony.

Inasmuch as it is the duty of the court in granting a decree of divorce to make such disposition of the property as is just and lawful, the presumption is, here, that the plaintiff, Josephine, was awarded all the property, no mention being made in the decree of any other property. Furthermore, it is apparent, from the affidavit upon which the court based its order for the petitioner to show cause why he should not be punished for contempt, and from the order itself, that the petitioner was adjudged guilty of contempt solely upon the ground that he had refused or failed to appropriate a portion of his salary to the payment of the sums required by the order

for alimony.  The question, clean cut, is, whether the court has the power to compel a divorced man to devote any portion of his present earnings to the support of the woman as to whom and himself the bonds of matrimony have been dissolved by the court, and both parties released from all the obligations thereof.  If it have such power, there may be this anomalous condition of domestic affairs: A man having a wife and children to support, under the obligations of the bonds of matrimony, and his duty as a parent, may be compelled to devote his daily wages—that which is necessary to maintain them—to the support of a woman who owes *him* no duty, and who may be the wife of another man.  If the power is vested in the court, it is absolute, and such a state of affairs may result.

If such a power as this exists, it ought to appear clearly in the letter of the law; it certainly is not the spirit of the law.  When the code commissioners framed and the legislature adopted the system applicable to marriage and divorce in this state, they made divorce easy by providing an unusually large number of grounds upon which it might be based, and placed no limitation upon the right of either spouse after divorce to marry again.  It never was intended, I think, to allow a man to marry as many times as he or his wives might have grounds for divorce, and compel him thereafter—subsequent to the dissolution of the marriage obligation — to support from his daily earnings those from whom he had been divorced.  With the policy of the law, however, judges have nothing to do.

Looking at the law upon which the respondent herein relies, I find nothing to support the view above referred to.  Section 139 of the Civil Code provides that when a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children, and may make such suitable allowance to the wife for her support during her life, or for a shorter

period, as the court may deem just; *but in executing this and other sections,* it is expressly provided that the court must resort, first, to the community property, and then to the separate property of the husband. Separate property is a relative term; it implies the existence of the community. After the divorce there is no community, and there can be no such thing as separate property. We do not speak of a single man's *separate* property, yet a divorced man is a single man. Separate property, as defined by the code, is that owned by him before marriage, and that acquired afterward by gift, bequest, devise, or descent. "Afterward" means, of course, after the marriage, and during the existence of the community. The earnings of this petitioner subsequent to the dissolution of the marriage are neither community property nor separate property. It would be a solecism to speak of property which had come to a divorced man from the community property of himself and his former wife—to speak of it after divorce—as his *community* property; and so it would be to speak of a single man's property as his *separate* property.

I am of opinion, therefore, that the order upon which the petitioner is held in custody is void, and that the matter can be tested on *habeas corpus,* because of the facts which appear on the face of the record itself. My view of the law is supported by the supreme court of Tennessee in *Chenault* v. *Chenault,* 5 Sneed, 247, and *Boggers* v. *Boggers,* 6 Baxt. 299. Those cases review and construe statutes similar to our own on this subject.

In view of the fact, however, that there is a decision of our own supreme court (*Eidenmuller* v. *Eidenmuller,* 37 Cal. 264) which seems to hold that the subsequent earnings of a divorced husband may be taken for the support of his former wife, and in view of the fact that the learned judges of our superior courts throughout the state differ widely as to the extent of the power of a court in such cases, I feel it to be my duty to remand

the petitioner to the custody of the sheriff. I shall, however, be pleased, if the petitioner make another application to me, to order a writ returnable before our supreme court in Bank, for the consideration and determination by the full bench of this most important question. It is one which affects a large number of people, and society generally, and one upon which, so far as the policy of the law is concerned, much can be said *pro* and *con*.

It is ordered that the writ be discharged, and petitioner remanded to the custody of the sheriff.