[No. 20632. In Bank. — March 24, 1890.]

Ex parte THOMAS M. SPENCER, on Habeas Corpus.

DIVORCE — OFFENSE OF HUSBAND — ALLOWANCE FROM FUTURE EARNINGS — JURISDICTION. — The court granting a divorce for the offense of the husband has jurisdiction to compel him to pay a certain sum monthly after divorce, out of his future earnings, independently of any common or separate property then *in esse*, for the support of the divorced wife, and by way of compensation for the deprivation growing out of his own wrong, which allowance it may subsequently increase or diminish as the changed circumstances of the parties shall warrant. (PATERSON, J., dissenting.)

ID. — DEFINITIONS — ALIMONY — PERMANENT ALLOWANCE — COMPENSATION TO WIFE. — Alimony in its strict technical sense proceeds only from

husband to wife; and is applied by the legislature only to an allowance for the support of the wife *pendente lite*. The permanent allowance provided for by section 139 of the Civil Code is not, properly speaking, permanent alimony, nor is it merely a substitute for the wife's interest in the common or separate property of the husband, but is allowed by way of compensation for a wrong done to the wife.

ID. — CONTEMPT — INABILITY TO COMPLY WITH ORDER — CONCLUSIVENESS OF FINDING — HABEAS CORPUS. — The court may enforce compliance with its order for the payment of a monthly allowance by the divorced husband for the support of his divorced wife, by imprisoning him for contempt for its violation, his only remedy being to purge himself of contempt by showing to the satisfaction of the court his inability to obey the order, and that such inability has not been caused by his own act for the purpose of avoiding payment. The finding of the court as to his ability is conclusive upon *habeas corpus*, and the prisoner cannot be discharged from imprisonment, if the facts showing jurisdiction appear upon the record.

APPLICATION to the Supreme Court for writ of *habeas corpus*. The facts are stated in the opinion of the court.

*Franklin P. Bull*, for Petitioner.

*Dorn & Dorn*, for Respondent.

Fox, J. — This is an application for discharge upon *habeas corpus*. The return to the writ shows that the respondent is imprisoned under an order of the superior court of the city and county of San Francisco, made upon conviction for contempt, in refusing to obey an order of the court theretofore made, requiring him " to pay the sum of twenty-five dollars per month as alimony," to Josephine M. Spencer, his former wife.

From the return and records introduced, it appears that on August 25, 1884, in the suit of *Thomas M. Spencer*, plaintiff, v. *Josephine M. Spencer*, defendant, a decree of divorce was granted to the defendant, upon her cross-complaint; the custody of a minor child was awarded to her; the household goods and personal property at the residence occupied by her were set apart to her; and it was further decreed that the plaintiff should pay to the defendant, " as permanent alimony, the sum of fifty dollars per month, on the first day of September, 1884, and

on the first day of each and every month thereafter." On May 13, 1887, on the motion of plaintiff, this decree was modified and the amount of alimony so fixed reduced to twenty-five dollars per month. In December, 1888, petitioner having failed for some time to make payment, he was cited to appear before the court and show cause why he should not be punished for contempt. On the return day of that citation the defendant, this petitioner, was examined under oath touching his ability to pay the moneys so required of him, and his reasons for not paying the same, and the court found that there was then due and unpaid the sum of $225; that demand therefor had been made; that he had been, and was, abundantly able to pay the same; and that he had permanent and lucrative employment. Upon these findings the court adjudged him guilty of contempt, and ordered that he be committed to the custody of the sheriff, and confined in the county jail until he obeyed the said order and paid the said sum of $225, so found due and unpaid under said decree, or until discharged according to law.

These proceedings seem to have been regular, and in accordance with the provisions of title 5, part 3, of the Code of Civil Procedure. And the order of imprisonment was in accordance with the provisions of section 1219, a part of that title, the court having found that the party convicted was able to make the payment required of him, and consequently that it was in his power to perform the act required. It is insisted here, however, that the court erred in this finding; that there was no evidence to support it. That is a matter into which we cannot inquire upon this writ. Under the writ the court can only inquire into the jurisdiction to find, not into the correctness of the findings upon which the conviction is based.

The only remaining inquiry is, whether the judgment or order which the petitioner is found guilty of having disobeyed was a lawful judgment or order.

Upon this point it is insisted that in divorce proceed-
ings, when the court reaches its final judgment, and
grants a decree of divorce under our statutes, dissolving
the bonds of matrimony, it has no jurisdiction or power
to decree the payment of "permanent," or indeed any
future, " alimony "; that the only provision on the sub-
ject of " alimony " is that found in section 137 of the
Civil Code, and relates entirely to what may be done
*pendente lite;* that alimony grows out of that obligation
of support which arises from the relation of husband
and wife, and proceeds only from husband to wife; that
the moment the decree of divorce is granted the relation
of husband and wife has ceased; there is then no hus-
band, no wife, and hence there can be no alimony.

It is true that " alimony," in its strict technical sense,
proceeds only from husband to wife, and that where the
relation of husband and wife does not exist, strictly
speaking there can be no alimony.   It is true, also, that
the legislature has used the term only in its strict legal
sense, and has therefore used the word "alimony" only
when prescribing the provision which the court might
make for the support of the wife *pendente lite.*   But the
courts have not always been as careful in their use of
the word.   They have frequently used it as a mere name
for another and different allowance, made, and author-
ized to be made, under section 139 of the Civil Code.   It
was manifestly so used in this case, and has been so
used in many others.   By that section it is provided:
" Where a divorce is granted *for an offense of the hus-
band,* the court may compel him to . . . . make such suit-
able allowance to the wife for her support during her life,
or for a shorter period, as the court may deem just,
having regard to the circumstances of the parties re-
spectively; and the court may, from time to time, modify
its orders in these respects."

That is exactly what the court did in this case, falling,
however, into the quite common error of calling the

allowance "permanent alimony." If such an allowance is lawfully made, the simple misnomer of it would not justify a court, even upon appeal, much less under this writ, in setting it aside. If it was excessive, or if the court erred in determining that it was a case in which such an allowance is authorized by law, the error was one to be corrected on appeal, not one to be set aside as for want of jurisdiction to make it. Under the code, which must " be liberally construed with a view to effect its object and to promote justice" (sec. 4), the court will look at the substance of the thing, and not defeat its object merely because somebody has misnamed it. Alimony rests upon the obligation of the husband to support the wife; allowance for future support has been held to be in consideration of and as a substitute for her interest in the community property, or her right of dower or inheritance in the property of the husband; but under our code it is something more, and something which the legislature had a right to authorize and the court to grant,— compensation for a wrong done to her. It will be observed that this allowance cannot be made when the divorce is granted for the offense of the wife,— only when it is for an offense of the husband; so expressly provided by the statute, and so held in *Everett* v. *Everett*, 52 Cal. 383. It proceeds upon the theory that the husband entered upon an obligation which, among other things, bound him to support the wife during the period of their joint lives, and gave to her a right to share in the fruits and accumulations of his skill; that by his own wrong he has forced her to sever the relation which enabled her to enforce this obligation, and for the wrong which thus deprived her of the benefit of the obligation, he must make her compensation. The court is to fix the measure of that compensation by "having regard to the circumstances of the parties respectively "; those circumstances furnishing the best means for determining the extent of her loss. As these circumstances may differ at different

times, "the court may, from time to time, modify its orders in that respect."

This allowance may be entirely independent of the property then *in esse.* It is the duty of the court, at the time of dissolving the marriage, to make proper division of the community property (secs. 146, 147), and, as we understand the law, it may, under section 139, in its discretion, compel the husband, in addition, to make what it deems suitable allowance for the future support of the wife during life or for a shorter period, having reference to their circumstances, etc. This by way of compensation for the deprivation growing out of his own wrong. In fixing this compensation or allowance, the court may regard the earnings of the husband, or his ability to earn money (*Eidenmuller* v. *Eidenmuller,* 37 Cal. 364), and may subsequently reduce the amount (Id.), or increase it (*Ex parte Cottrell,* 59 Cal. 417), as, in its opinion, the changed circumstances of the parties shall warrant, and may enforce compliance with the order by imprisonment for contempt (*Ex parte Perkins,* 18 Cal. 60; *Ex parte Cottrell, supra*); and the husband may purge himself of contempt by showing that he is unable to obey the order, and that his inability to pay the sum directed has not been occasioned by his own act for the purpose of avoiding payment. (*Galland* v. *Galland,* 44 Cal. 475; 13 Am. Rep. 167; *Ex parte Cottrell, supra; Ex parte Wilson,* 75 Cal. 580.)

The question of whether or not disobedience of the order for the payment of this allowance is contempt which may be punished by imprisonment, so ably discussed by counsel for petitioner, is no longer an open one in this state, as will be seen by the cases above cited, and perhaps others. The order for such allowance, or any subsequent order made in modification thereof, is subject to review upon appeal (*Eidenmuller* v. *Eidenmuller,* 37 Cal. 364); but until reversed it must be obeyed, or the party must purge himself of contempt by showing

his inability to pay it, and that the inability is not occasioned by his own act for the purpose of avoiding payment.

The remaining questions presented in this case were fully considered in *Ex parte Wilson*, 75 Cal. 580, and we see no reason to depart from the conclusion there reached.

Let the writ be dismissed.

SHARPSTEIN, J., McFARLAND, J., THORNTON, J., and BEATTY, C. J., concurred.

PATERSON, J., dissenting.—For the reasons given by me when this matter was before me in chambers, I dissent. (*In re Spencer*, 82 Cal. 110.) I do not believe that the legislature intended to provide that the immediate daily earnings of a man, having a wife and child dependent upon him for surport, should be taken to support the wife of another, because he may have had, at some prior period of his life, the fortune or misfortune to be her husband; yet to that extent the exigencies of the conclusion reached by my learned associates carry us. It is a construction which seems to me to be at variance with the entire scope and spirit of the law governing the subject of " personal relations." Such a law, if it exist, should be repealed, or the right to an absolute divorce and privilege of remarriage be abolished. The case of *Eidenmuller* v. *Eidenmuller* was based upon statutes entirely different from the provisions of our code. At that time divorces were granted from bed and board, and there was no provision like that of section 141 of the Civil Code, viz., " that in executing the five preceding sections the court must resort, first, to the community property; then second, to the separate property of the husband." The meaning of these provisions I attempted to point out in the opinion above referred to.

In view of the construction given to the provisions of the code by the majority, a word as to the policy — im-

policy rather — of such a law may not be out of place, as a suggestion to the legislative department, not, however, in an attempt to show that the construction adopted by the court is erroneous.

The law encourages the marriage of persons competent to assume the marriage relation, and fosters its continuance.   All contracts and conditions in restraint of marriage are void, being against public policy.   In this state divorce is absolute; there is no such thing as divorce from bed and board under the law as it now exists. When · a marriage is dissolved, each party is relieved from all the obligations of the bond.   From the time of the dissolution they are single persons, and their acts are, as between themselves, the acts of strangers, — no obligations or duties are due from one to the other. They are free to marry again, — indeed, as stated above, the law encourages them in the assumption of marital rights and obligations.   (Perhaps one good effect of the court's construction will be to *discourage* them in the future.)   Recognizing the fact that the marriage relation in some instances should no longer exist, six different grounds are prescribed, upon any one of which, in a proper case, the relation may be dissolved.   In certain cases penalties are fixed to be imposed upon the guilty party, but they all relate to the property, separate and community.   No personal penalty is provided, such as imprisonment, or forfeiture of or limitation upon the privilege of remarriage.

Under these provisions a divorced man marries a second or third time.   The divorced wife does the same thing.   The man upon whom devolves the duty of supporting his family is dependent upon his daily earnings to perform this duty.   The woman, who has by the decree of divorce been released from all duties toward him, demands that his earnings, or a portion of them, shall be devoted to her support, and his lawful wife and their children must take what is left.   If he refuse to take the

bread from them and give it to her who owes him no duty, he may be thrown into jail, and be thus deprived of the power to support any of them. Such a law as this — a law which permits or encourages a man to assume the responsibilities of husband and father, and imposes at the same time such inconsistent conditions, and such unequal and inequitable burdens — ought not to blister the pages of our statute-books. Either absolute divorce should be denied and the privilege of remarriage be abolished, or it should be provided — as I believe our laws under proper construction do now provide — that only the property, separate and community, in existence at the time the marriage is dissolved, may be taken for the support of the divorced wife. It is an anomalous condition of domestic affairs which requires a man who has been permitted and encouraged to assume new marital duties and obligations to support a legal relict, who is not only matrimonially dead to him, but is perhaps married to another, who is unable or unwilling to support her.

The leading opinion does not discuss the question whether or not the subject before us can be tested properly on *habeas corpus.* I deem it unnecessary, therefore, to investigate or consider that matter.