## Ex Parte Pesquera.

### Appeal from the District Court of San Juan, Section 2.

No. 355.—Decided June 8, 1911.

Contempt—Habeas Corpus—Review of Acts of Constituting Contempt.—Acts constituting contempt, which have served as grounds for a judgment of conviction rendered against a party who has committed contempt, cannot be reviewed in *habeas corpus* proceedings, but, on the contrary, if the trial court had jurisdiction of the subject matter and the person, its estimate of the facts is conclusive.

Id.—Writ of Commitment—Requisites Thereof in Cases of Contempt—Marshal of Court—Jailer—Foraker Act.—Upon examination of the writ of commitment issued against the petitioner in view of a judgment of conviction for contempt, and considering the requirements of section 3 of the Law of Contempt, approved March 1, 1902, as amended by the Act of March 8, 1906, and section 327 of the Code of Criminal Procedure, the court held that said writ substantially meets all the requirements of law, but that the same should not run in the name of the "United States of America, the President of the United States," because a writ of commitment does not constitute the judicial process referred to in section 16 of the Foraker Act.

Id.—Warrant of Arrest—Means of Bringing into Court Persons Committing Contempt.—In view of the wording of the Law of Contempt, approved March 8, 1906, the absolute necessity of issuing a warrant of arrest against a person who commits contempt in the presence of the court is questionable, although we are of the opinion that it is better practice so to do.

Id.—Arrest of Accused—Certified Copy of Judgment of Conviction.—Under the provisions of section 327 of the Code of Criminal Procedure, a certified copy of the judgment of conviction is sufficient warrant for the commitment of the accused, and said provisions should be complied with in all cases.

Id.—Habeas Corpus—Errors of Form in Writ of Commitment.—In accord-

ance with section 484 of the Code of Criminal. Procedure, the errors of form which a writ of commitment may contain cannot in *habeas corpus* proceedings serve as grounds for decreeing the liberation of the petitioner.

ID.—JURISDICTION OF MUNICIPAL COURTS TO PUNISH FOR CONTEMPT COMMITTED IN PRESENCE THEREOF—COURTS OF RECORD—PEACE COURTS.—According to the statutes in force in Porto Rico, municipal and peace courts are not courts of record.

ID.—MUNICIPAL COURTS—PEACE COURTS—JURISDICTION TO PUNISH FOR CONTEMPT.—Bearing in mind that according to sections 4 and 14 of the law reorganizing the judiciary, approved March 10, 1904, municipal judges exercise all the functions of the justices of the peace whom they substituted, and that in accordance with an act approved May 28, 1904, the criminal procedure in municipal courts is the same as that which governs in peace courts, it is unquestionable that in accordance with sections 56 and 61 of the Code of Criminal Procedure municipal courts have power to maintain the order and the dignity thereof by punishing contempts committed in the presence of the court by imposing the penalties provided in aforesaid section 61.

ID.—POWERS OF MUNICIPAL COURTS TO PUNISH FOR CONTEMPT.—Even supposing that sections 56 and 61 did not, for the reasons stated in the preceding paragraph, confer power on municipal courts to punish for contempt, the provisions of section 29 of the Code of Civil Procedure would confer such power in the cases enumerated in said section.

ID.—MUNICIPAL COURTS—EXCESSIVE PUNISHMENT.—After considering the punishment of five days' imprisonment imposed on the petitioner, the court held that such punishment was not excessive and that the municipal court did not exceed its jurisdiction in imposing the same, inasmuch as according to said section 61 the court is not bound to impose the alternative punishments of fine or imprisonment, but can impose either or both.

The facts are stated in the opinion.

Mr. *José L. Pesquera* for appellant.

Mr. *Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE MacLEARY delivered the opinion of the court.

This is an appeal from a judgment of the Second Section of the District Court of San Juan remanding the prisoner, on a proceeding in *habeas corpus,* to the custody of the jailer of the municipal prison of Dorado. The appellant, who is an attorney practicing in the municipal court of Bayamón, over which the Hon. L. Santiago Carmona presides, was trying a criminal case in that court, and on the judge undertaking to propound certain questions to a witness made objections thereto, from which a colloquy arose, which resulted in the court adjudging the attorney to be in contempt and com-

mitting him to the municipal jail of Dorado, in which village
the court was being held, for five days. These proceedings
took place on April 19, 1911, the court having previously
called the attorney to order several times, all of which facts
appear from the order of commitment set out in the record.

Denying the jurisdiction of the municipal judge to im-
prison him for contempt, the attorney applied to Judge Gill,
of the district court, for a writ of *habeas corpus,* and on the
trial of the case, the controversy being thoroughly ventilated,
on April 26 last the court made an order refusing to liberate
the prisoner and remanding him to the custody of the jailer
aforesaid, there to comply with the sentence of the Municipal
Court of Bayamón.

From this judgment the petitioner appealed to this court,
and the case was duly heard herein on appeal on May 5 last,
the appellant being present in person and by attorney and
The People of Porto Rico being represented by the *fiscal* of
this court. Several grounds are alleged here for a reversal
of this judgment and the liberation of the prisoner, which
we will examine in their proper order.

The *first* question arising from the record is as to the
power of the district court, in a proceeding of *habeas corpus,*
to examine into the facts on which the judgment of contempt,
rendered by the municipal court, was based. It is well estab-
lished by many authorities that the court, trying a *habeas
corpus* case where the prisoner is confined on a judgment
of contempt rendered by another court for misconduct occur-
ring in the presence of the tribunal, has no such power; but
that the facts in such contempt cases are regarded as con-
clusively settled and, if the court proceeded according to law
and had jurisdiction of the person and the subject matter
and the authority to pronounce the sentence, the order of im-
prisonment must stand. (*Spencer ex parte,* 83 Cal., 460;
*Clark ex parte,* 110 Cal., 405; *Shattuck* v. *State,* 24 Am. Rep.,
624; *Tolman* v. *Jones,* 114 Ill., 153.)

These authorities are sufficient, but many more might be

added thereto, which can be found in 9 Cyc., 68, note 5; Rapalje on Contempt, section 157, as well as other standard text books on *habeas corpus* and contempt proceedings.

The *second* question presented is whether the writ of commitment is null or void because it does not comply with the statutes. It is insisted that the writ does not accord with the requisites of the organic law nor with the statute governing contempts, passed on March 1, 1902, and amended on March 8, 1906. (See sec. 16 of the Organic Act and Rev. Stats. P. R., 83.) The 16th section of the Organic Act prescribes the form of all judicial process; that it shall run in the name of the United States of America, the President, etc. The case of *Solares ex parte* (4 P. R. Rep., 154) is referred to as sustaining the contention that the writ is a nullity. That case was not one for contempt, in which the proceedings are summary and more or less informal. Hence it cannot be regarded as a precedent for the case now under consideration. True it is that the 3d section of the statute regulating proceedings in contempt cases, cited above, prescribes that the commitment shall state the act or acts constituting the contempt as well as the date, the place, and the circumstances of the same with a specification of the said judgment, without which it shall be null and without effect. The writ which we find in the record substantially does all this and is sufficient to comply with the law.

Section 327 of the Code of Criminal Procedure furthermore provides:

"When a judgment, other than of death, has been pronounced, a certified copy of the entry thereof upon the minutes must be forthwith furnished to the officer whose duty it is to execute the judgment, and no other warrant or authority is necessary to justify or require its execution."

This is the law from which the marshal of the court and the warden of the jail derive their authority to imprison the applicant. The copy of the judgment in the case before us,

certified by the secretary, amply fills this requirement. It is urged that all process must run in the name of the President of the United States, but such an order issued by the judge is not properly process, but commitment or execution. It is called an order or warrant in the statute of 1906. But this does not make it the *process* to which the Organic Act in section 16 refers. (2 Bouvier, 766.)

The proceeding to bring a man into court theoretically emanates from the executive department and is known as process, but jurisdiction once being acquired it is the court that issues all further orders necessary to carry on its business and execute its judgments. It is questionable, under the wording of the Act of March 8, 1906, whether any order or warrant at all is necessary to effect the arrest of a person for a contempt committed in the presence of the court; but we think to issue such an order is the better practice in most cases. Here, as we have already said, the order or warrant of commitment showed "the acts constituting the contempt, the time and place of the commission thereof, the circumstances and the sentence of the court," as required by statute and was entirely sufficient. (Rev. Stats. P. R., art. 146.)

Not only is a certified copy of the judgment of conviction a sufficient warrant for the commitment and detention of a prisoner in jail, under section 327 of our Code of Criminal Procedure, but it is held that this section of the statute must in all cases be complied with according to its terms—that is to say, a copy of the judgment of conviction must be furnished to the warden of the prison as his authority for the incarceration of the prisoner. (*Eugenio Buitrago ex parte,* decided 12th of December, 1906 [11 P. R., 447]; *Lino Julio ex parte,* decided 22d of June, 1905 [9 P. R., 183]; *Pablo Rolón ex parte,* decided 22d of June, 1905 [9 P. R., 182]; *José G. Torres ex parte,* decided 24th of May, 1905 [8 P. R., 472]; *Justo Aranzamendi ex parte,* decided 18th of May, 1905

[8 P. R., 435]; *José Benito ex parte,* decided 14th of November, 1904 [7 P. R., 457].)

Moreover, if any defect in the writ of commitment could be found it would be merely one of form, and under section 484 of our Code of Criminal Procedure the prisoner cannot on that account be released on *habeas corpus* proceedings. (Code of Criminal Procedure, sec. 483, par. 3; *Bird ex parte,* 3 P. R., 500; *Bird ex parte,* 4 P. R., 422; *Medina ex parte,* 4 P. R., 502.) The writ of *habeas corpus,* as we have often held, cannot serve the purpose of an appeal or a writ of error. (*Cintrón ex parte,* 5 P. R., 185; *Bird ex parte* 5 P. R., 505.)

Then we arrive at the *third* question involved in this record, which is: Did the municipal court, in imprisoning the petitioner for contempt committed in its presence, have jurisdiction of the case, or did it exceed the jurisdiction conferred thereon in condemning the prisoner to imprisonment for five days absolutely and not as an alternative for the non-payment of a fine? To determine this matter we must decide which statute applies to this case—section 61 of the Code of Criminal Procedure, or the law concerning contempts, passed on March 1, 1902, found in Revised Statutes, pages 83–85. By its terms the latter statute refers only to courts of record. And we must then inquire, Are the municipal courts in this Island courts of record? They cannot be so regarded. This is settled by our statutes, which plainly say that the Supreme Court and the district courts in Porto Rico are courts of record and as plainly imply that municipal courts and justices' courts are not. (Code of Civil Procedure, secs. 3 and 4, p. 190.) Under all the best authorities they would be excluded from that category. (1 Bouvier's Law Dictionary, 465, and authorities there cited.)

But the petitioner insists, basing his argument on article 146 of the Revised Statutes, that the municipal courts fall within the purview of the law of March 1, 1902. It is said that otherwise the law would refer to a class of courts which does not exist. That may be so; but it may have been the

intention of the legislature to provide for a class of courts of record which future legislation may call into being. This surmise at least is more reasonable than in disregard of well-established principles to class municipal courts as courts of record. If the legislature had intended to make municipal courts to be courts of record it could easily have so declared, and we would be bound so to regard them.

The district judge who tried this case bases his judgment on a decision rendered by the Hon. Félix Córdova Dávila, in the District Court of Guayama, in the case of *Manuel Rivera Torres ex parte,* wherein the trial judge rendered a very lucid and logical opinion, which commends itself highly to our approbation. Let us examine further the law applicable to cases of contempt committed in the inferior courts of Porto Rico.

The special law, defining the offense of contempt of court, and fixing the corresponding penalty therefor, was approved on March 1, 1902, and took effect from the date of its approval. The Penal Code and the Code of Criminal Procedure, which were likewise approved on the same day, took effect on July 1, 1902. So that, from the latter date, there were in force at one and the same time three statutes, to wit, the special law relating to contempt of court, sections 45 and 145 of the Penal Code, and section 61 of the Code of Criminal Procedure. (See Rev. Stats. and Codes of Porto Rico, pp. 83, 478, 502, 503, and 637.) If immediately after these laws had taken effect a justice of the peace, on finding his authority treated with contempt, had punished the party who was guilty thereof by five days imprisonment in jail, the justice would not have exceeded his authority in the exercise of his functions, according to section 61 of the Code of Criminal Procedure, and this notwithstanding the provisions of section 2 of the act defining the offense of contempt of court and fixing the penalty therefor. This is conceded by every one. Now let us see whether, after the later modifications introduced into the laws, section 61 of the Code of

Criminal Procedure continued to be in force, and whether the municipal judge had any authority to impose a punishment for contempt thereunder and by virtue of the provisions of said section. Sections 1 and 3 of the special law relating to contempt of court, above referred to, were amended by a statute passed on March 8, 1906, which also repealed section 145 of the Penal Code, and amended section 45 of the same code. (Sess. Acts 1906, pp. 43 and 44.) These amendments did not in any way change or modify the second section of the aforesaid special law, which continues to be in force just as it was approved in March, 1902, the same as section 61 of the Code of Criminal Procedure, which likewise has not undergone any modification. (See Sess. Acts cited above.)

The office of justice of the peace, as created by section 14 of the Code of Criminal Procedure (Rev. Stats. and Codes P. R., pp. 623 and 624), was expressly abolished by section 3 of the "Act reorganizing the judiciary of Porto Rico," approved in March, 1904, which created the office of municipal judge. (Sess. Acts 1904, p. 105.)

Section 4 of the last-mentioned act reads as follows:

"Except as provided hereafter in this act, the municipal judges created hereby shall fulfil all the duties which are at present performed by the justices of the peace and municipal judges."

These duties of the municipal judges appear thereafter to be limited by section 14 of the same law, which reads as follows:

"In all the municipalities except those of San Juan, Ponce, and Mayagüez, for which provision has been made in section 4 of this act, and except in districts with a municipal court in which there is only one town, there shall be appointed a justice of the peace, with jurisdiction to hear and determine offenses in which the punishment imposed may not exceed a fine of fifteen dollars, or imprisonment not to exceed thirty days; and they shall also have jurisdiction in all cases of violations of municipal ordinances, and during the absence of the municipal judge the justice of the peace shall act

as an examining and committing magistrate." (Sess. Acts 1904, pp. 109 and 110.

The foregoing statutes show in a clear and precise manner what are the power and duties of the municipal judges, as well as those pertaining to the justice of the peace. The limits of the spheres of action within which both such officials discharge the functions of their several offices are fully defined, and we may very well say that where the duties of the justice of the peace end those of the municipal judge begin.

Is the latter official authorized, then, to impose a punishment of imprisonment in accordance with the provisions of section 61 of the Law of Criminal Procedure? We have seen that, according to the statute law, the municipal judge must fulfil the same duties as are required of the justice of the peace, and notwithstanding the fact that his functions commence where those of the justice of the peace terminate, this limitation of authority in criminal matters or the like refers only to ordinary or common offenses, and not to contempt of court which is of a peculiar nature; for if the municipal judge discharges the same duties as the justice of the peace, although bounded by certain limits, he must also have within his power the same means by which to assert his authority, and among them the ability to punish any person who commits contempt of his court, in accordance with sections 56 and 61 of the Code of Criminal Procedure. But if sections 4 and 14 of the "Act reorganizing the judiciary of Porto Rico," cited above, when construed together, were not sufficiently clear, and left any room for any doubt regarding this matter, such doubt is swept away by the law of May 25, 1904, which prescribes the procedure for trials of criminal cases before the municipal courts.

Section 1 of said law reads as follows:

"That the procedure for the institution and trial of criminal cases in the municipal courts shall be the same as provided by law for criminal cases in the justice of the peace courts." (Sess. Acts of 1904, special session, p. 12.)

By virtue of this statute both courts must be governed by one and the same procedure, and it is evident that the judges of both courts must have identical powers to maintain order, to make regulations conducive to the proper conduct of the matters pending before them, to exact obedience to their orders, judgments, and decrees, and to discharge the functions that are prescribed by section 56 of the Code of Criminal Procedure, which, likewise, form part of the procedure in such courts. The aforesaid section 56 specifies the powers of the justice of the peace to maintain the dignity of the court and to enforce order in the conduct of the proceedings therein; and section 61 prescribes the penalty which a justice of the peace may impose in order to punish for all contempts committed in his presence. The latter section reads as follows:

"Said justice of the peace shall have power to punish for contempt committed before him in the exercise of his judicial duties by a fine not exceeding two dollars and fifty cents or imprisonment in jail not exceeding five days or both."

After reviewing the statutes governing these matters as we have just done we have no doubt whatsoever in regard to the power of the municipal judge to impose the punishment of both fine and imprisonment in accordance with the same section. It is evident that if any person in the progress of a trial commits a contempt of court in the presence of the municipal judge, the latter may punish him, conforming in so doing to section 61 of the Code of Criminal Procedure, acting in accordance with the law of May 28, 1904, which prescribes the same procedure for the municipal courts as for the courts of justices of the peace in this as well as other cases.

It is also provided in section 29 of the Code of Civil Procedure that "for the effectual exercise of the powers conferred by the last section, a judicial officer may punish for contempt in the cases provided in this code." (Sess. Acts 1904, p. 196.) If all special authority were lacking to these

courts this general authority would authorize the proper action on the part of municipal judges in such cases. The judgment from which this appeal is taken might be, if necessary, sustained on this last-cited statute alone.

It is just as important for the proper administration of justice that the lower courts in this Island should be properly authorized to maintain order during their sessions, and to maintain the dignity of their tribunals, and to command respect for their proceedings as it is that such·power should be conferred on the higher courts. A paltry penalty of a fine of $2.50 would hardly suffice to restrain some persons in the excitement of interest or feeling during the progress of a hotly contested trial; and all the support necessary should be given by the legislature, as well as. the bench and the bar, to those conscientious and laborious gentlemen who are serving their country in the honorable stations of the lower courts in their efforts to properly discharge their judicial duties.

At the same time a municipal judge ought not to inflict severe penalties except in cases of flagrant disobedience of his orders.

Taking these views of the various matters presented in the record, the judgment of the Second Section of the District Court of San Juan must be affirmed, remanding the prisoner to the custody of the warden of the municipal jail of Dorado to serve out his sentence.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro, and Aldrey concurred