## OLIVIERI ET AL.

### *v.*

## OLIVIERI ET AL.

---

San Juan, Equity, No. 196.

CONTEMPT PROCEEDINGS.

Contempt—Hearing.
    1. The dignity of a court requires that its orders must be first
    obeyed, and only afterwards it can be shown why the order should
    be set aside.

Olivieri v. Olivieri.

Jurisdiction of Third Persons.

2. A court can make an order against anybody in any part of its district provided it first have jurisdiction of the res, the person, and procedure. An order to a party, however, may include his agent, and where a court has jurisdiction of property it will not permit interference by anyone, party or stranger. If a marshal puts a party in possession, but does not put anyone out of possession, there can be no contempt on the part of one interfering afterwards with the possession.

Opinion filed September 13, 1918.

Mr. *O. M. Wood* for Emilia Molla, viuda de Fuster.

Mr. *O. B. Frazer* for respondents.

HAMILTON, Judge, delivered the following opinion:

This case has been upon the dockets of the courts in one form or other for many years. It grew out of a receivership, and incidentally involved the sale of certain lands to meet tax claims. At one such sale H. P. Leake was purchaser of a certain tract of land described as follows:

"Rural Property.—Situated in the ward of Hato Puerco of the municipal district of Juana Diaz, known as El Limon, and composed of 200 acres of land, equivalent to 60 hectares, 68 arcs, and 60 centiares, bounded on the north by the Limon farm, on the east by lands of Ruperto Anguita and Juan Santiago; on the south by lands of the succession of Isidoro Ortiz and Pablo Melendez, and on the west by the lands of the succession of Criado."

And subsequently he deeded the same to Robert B. Noyes,

Olivieri v. Olivieri.

and by his consent it was redeemed by Fuster Hermanos in 1913. The deed was made to Noyes, but on account of defects a second deed was made by the marshal under orders of this court to Fuster Hermanos. Upon the application of Fuster Hermanos the marshal was directed to put them in possession, and on Tuesday, June 18, 1918, about 6 o'clock in the evening the marshal went to the farm in question, notified the occupants, posted the customary notices, and delivered the farm to the petitioner Emilia Molla, viuda de Fuster, giving her possession in the name and by the order of this court, the marshal and petitioner then returning to Ponce. The petition shows that the next day petitioner's mayordomo was denied free access to the farm by those in possession, to wit, Guillermo Quesada and one Delfin, who refused to respect the order of the court. Thereupon the said Quesada and Delfin were cited to appear and show cause why they should not be adjudged in contempt. They accordingly made what is labeled an answer, but is probably more properly described as a demurrer and to the effect that the "petition does not allege facts sufficient to show any contempt," wherefore they pray that the order to show cause be discharged.

1. There is no doubt that parties committing a contempt cannot be heard upon the merits of the case or set up improvidence in the issue of the writ until purged of the contempt. If a court having jurisdiction should issue an erroneous order, it is obligatory until reversed by an appellate court and cannot be disobeyed. Re Cohen, 5 Cal. 494. An order of the court must be obeyed until it is reversed. Ex parte Spencer, 83 Cal. 460, 17 Am. St. Rep. 266, 23 Pac. 395. The dignity of a court requires that its order must be first obeyed and only

afterwards ground can be shown why the order should be set aside.

2. A court, however, is not like an army, having the right to make any order against anybody in any part of the controlled territory. An order of court presupposes jurisdiction of the res, the person, and proper procedure. A court can make an order directed to any party to a case or his agent, and disobedience constitutes a contempt. There are also cases in which a court, having taken jurisdiction of property, will not permit interference with it on the part of any person, party, or stranger to the suit. In either of these instances a contempt is committed by those who are disobedient, and immediate punishment should follow.

Are the proceedings at bar equivalent to either of these cases?

There was no order directed to the two persons who have been brought in by contempt proceedings. They are not known in the records of the case, and so far as shown they are not the agents of any party.

On the other hand, the property described was a part of that once in the hands of the receiver of this court, but the receivership has long since been closed. The sale in question was analogous, but at all events does not amount to the same thing as retaining possession by the court. As the land had been a part of the receivership property, the order to the marshal to put the purchaser's representative in possession was proper. If anyone had offered opposition to the marshal in putting the purchasers in possession, it might be that he would be guilty of a contempt of the court, unless he could show that there had been some change of rights since the court had had actual possession through its receiver. At all events this question is not raised by the evidence on this petition. The petition itself distinctly

Olivieri v. Olivieri.

states that the marshal placed the petitioner in possession of the property on a certain evening. The interference or contempt complained of arose, so far as shown by the facts, on the next day, and it is not alleged or shown that it was by the persons whom the marshal put out of possession the evening before. The general rule, except perhaps as to receivership property, is that the maxim caveat emptor prevails in judicial proceedings. Except in certain proceedings sometimes authorized by statute to clear the title of land, the court in no sense warrants the title of property which passes through its hands, and especially is this true after the property has left its hands. When the marshal placed the petitioner in possession on the evening of the 18th of June, he fulfilled his duty, and the power of the court was functus officio. If someone wrongfully put the petitioner out of possession the next day it was a matter which must be redressed in the ordinary course of law. What would be the proper procedure if it was shown that these were the very persons whom the marshal had expelled the evening before, need not be passed on, because the facts do not show that they were the same. In no case is the court a continuing guarantor of title or possession. When the petitioner was put in possession it was her right and duty to stay in possession, and neither the right nor the duty of the marshal to remain upon the premises and protect her in her possession of the finca.

In point of fact the marshal's return shows as follows:

"I hereby certify and return that I received the within order of court on the 3d day of June, 1918, and that on the 17th day of June, 1918, I proceeded to the place where the property herein referred to is situated and posted thereon the following notice:

Olivieri v. Olivieri.

"Public notice is hereby given that I have this day placed Fuster Mnos & Co., its heirs and assigns, in possession of the following described property, to wit: (previously described).

"I also posted two similar notices at different places on the public road and near to said property."

The marshal put no one out of possession and indeed saw no one. Consequently under the facts of this case it is impossible for anyone to have committed a contempt of court, or the collateral offense of resisting an officer of the court. If the marshal had put a party out of possession in the evening, and the next morning, before the plaintiff could exercise any real acts of possession, the same defendant had resumed possession, it might possibly be that the court would consider the execution of the writ of possession to be imperfect or not concluded, and would give whatever relief was appropriate. This is not determined, for the facts of the case make it unnecessary to determine it. They show that the marshal placed Fuster in possession of apparently vacant land, and do not show anything further.

It follows, therefore, that there has been no contempt of court, and the rule must be discharged.

It is so ordered.