## GARBER v GARBER

Ohio Appeals, 2nd Dist, Montgomery Co

No 1502. Decided July 25, 1938

Estabrook, Finn & McKee, Dayton, for plaintiff-appellant.

. Jacobson & Durst, Dayton, for defendant-appellee.

## OPINION

BY THE COURT:

This is an appeal on questions of law.

Plaintiff instituted his action for divorce against the defendant and she filed a cross petition for divorce, alimony, custody of two minor children and for their support. When the case came on for trial the plaintiff dismissed his petition and the cause was tried upon the cross petition and a decree of divorce granted to defendant on the ground of gro_s neglect of duty. The exclusive custody of the children, Robert aged 9 and Kent aged 6, was granted to the defendant except for the months of July and August of each year when plaintiff was given "the right to see and visit with said children at all reasonable times."

The court awarded alimony to the defendant and set up a trust from certain holdings of plaintiff and provided that the income therefrom should be used for the support of minor children and named I. L. Jacobson and Ada Elizabeth Garber, trustees and made provision for distribution of the corpus of the trust at its termination. To this order of the court as to alimony, custody of the children and their support, the plaintiff prosecutes this appeal and assigns nine grounds of error, which are set out in the briefs under the following headings:

A. The court erred in denying appellant the right of reasonable visitation of the minor children of the parties.

B. The lower court abused its discretion by granting to Mrs. Garber an unfair, oppressive, confiscatory and disproportionate part of Mr. Garber's property, the decree in that respect being contrary to law and contrary to the weight of the evidence.

C. The lower court erred in sterilizing and impounding approximately three-fifths of Mr. Garber's assets to provide for the suport of the children.

D. The lower court erred in allowing Mrs. Garber's attorney's fees direct from Mr. Garber out of that portion of Mr. Garber's assets the lower court " is going to let him retain" and in making such fees a lien upon that property.

We consider together the claimed error as to the allowance of alimony and the provision for the support of the minor children. We shall not attempt to set out the value of the holdings of the plaintiff as fixed by him, by the defendant or the trial judge at the time of the hearing but in the amount which we believe to be their fair market value at that time:

ASSETS OF PLAINTIFF

| | |
|---|---:|
| Mutual Home B. & L. Assn running stock certificate, 55% of face value | $ 7,588.37 |
| Gem City B. & L. Assn. running stock certificate | 20,000.00 |
| West Side B. & L. Assn. C. of D.. | 720.71 |
| Montgomery B. & L. Co. C. of D.. | 1,880.00 |
| 550 shares Collateral Equities.... | 3,025.00 |
| Deposit, Phillipsburg Bank | 384.76 |
| Deposit, Farmers & Citizens Bank, Trotwood | 1.76 |
| Certificate of Claim against Union Trust Co. | 233.33 |
| Household goods | 1,000.00 |
| Residence Property in Trotwood. | 5,000.00 |

| | |
|---|---|
| 80 Acre Farm, Darke County ..... | 6,400.00 |
| Studebaker Automobile ......... | 500.00 |
| **TOTAL** .....................$46,733.93 | |

Of these holdings the court awarded to the defendant:

| | |
|---|---|
| Mutual Home Certificates ........$ | 7,588.37 |
| Deposit in Phillipsburg Bank..... | 384.76 |
| Deposit in Farmers & Citizens Bank ......................... | 1.76 |
| Household goods ............... | 1,000.00 |
| **TOTAL** . ....................$ 8,974.89 | |

The court placed in trust for the children the following:

| | |
|---|---|
| Certificates in Gem City ........$20,000.00 | |
| Dwelling House in Trotwood ...... | 5,000.00 |
| Farm . ......................... | 6,400.00 |
| **TOTAL** ....................$31,400.00 | |

This left to the plaintiff

| | |
|---|---|
| Certificates of deposit in West Side B. & L. .......................$ | 720.71 |
| C. of D. Montgomery B. & L....... | 1,880.00 |
| 550 Shares Collateral Equities.... | 3,025.00 |
| Studebaker car .................... | 500.00 |
| Certificate of Claim vs. Union Trust Co. ..................... | 233.33 |
| **TOTAL** . ...................$ 6,359.04 | |

From this the plaintiff was required to pay to defendant's counsel $1,000, leaving to the plaintiff holdings of the value of $5,359.04.

Much of the briefs of counsel for the parties is directed to the question whether or not the court in awarding alimony to the wife may take into consideration the degree of misconduct of the husband, constituting the ground upon which the divorce and alimony are awarded. Counsel for the plaintiff assumes that the basis of the Court's decree was punishment of the plaintiff for his misconduct and carefully briefs the law supporting the claim that this is improper. Opposing counsel insist that the court has such right.

We cannot say that the trial judge in making the alimony award and support provision purposed to punish the plaintiff. Some things that were said by the judge during the progress of the trial and at the time that he made his findings, together with the fact that he would not accord counsel for either party the right to present briefs on the legal questions for consideration, permit the inference that he had in mind that plaintiff should be punished by the order which he would make. However, taking the finding as a whole it bears the construction that the trial judge made only such an award as he deemed equitable and just under all the circumstances. It would be essential to a reversal on the ground that the Court had no right to include in the award for alimony any sum representative of punishment to the plaintiff for his misconduct, that it first be determined that the award was so made. We do not and can not so find. If we did so resolve the decree, there would be presented a very interesting question under the authorities. We will not discuss them at length, but be content to quote briefly from some text and some cases.

In 19 Corpus Juris 256, note 47, it is said:

"Since alimony may be awarded by way of compensation to a wife, or given to her for the support to which she was entitled by the marriage and which she has been compelled to forego, the conduct of the husband is a proper subject of inquiry in reaching the determination as to the amount to be allowed, such as his cruelty. The greater the wrongs inflicted upon the wife by the husband the more liberal should be the award."

This test is suported, in the main, by the cases cited.

In Glaser v Kiser (Minn.) 14 N.W., 762 the Court had under consideration the constitutionality of a statute entitling a divorcee because of husband's imprisonment for adultery, to same interest in his lands as if he were dead. It was claimed that such provision was cruel and inhuman punishment. The Court said:

"The general principle is clear that the greater the enormity of the husband's misconduct, the more grievous the wrongs of the wife the more liberal should be the award of alimony."

In Ex Parte Spencer (Calif.) 23 Pac., 395 the Court considers an allowance for future support under a statute very much like ours and said in the opinion:

"Allowance for future support has been held to be in consideration of and as a substitute for her interest in the commun-

ity property, or her right of dower or inheritance in the property of the husband, but under our code it is something more, and something which the Legislature had a right to authorize and the Court to grant, compensation for a wrong done to her."

In Pauly v Pauly (Wis.) 34 N.W. 512, the Court cites with approval Burr v Burr, 7 Hill, 207:

"Where the dereliction of the husband has been established and the wife is the injured party, driven by his cruelty from the comforts of domestic enjoyments, she should be liberally supported. Alimony in such a case is in the nature of damages, compensation for the injury and for the abused wife's physical and mental sufferings and for the loss of what ought to be a good husband's society; and she ought to be made as well off pecuniarily away from him as could reasonably have been expected with him." 2 Bishop, Marriage and Divorce, Paragraph 468.

We have examined the authorities on this question cited by the parties and find them interesting, but we will not take more time to discuss them.

It is, of course, fundamental that in Ohio the Courts in awarding alimony are required to follow the statutory law. §11990 provides that where the divorce is granted for the aggression of the husband the "Court shall allow such alimony out of her husband's property as it deems reasonable, having due regard to property which came to him by marriage and the value of his real and personal estate at the time of the divorce" and §11991 provides that such "alimony may be allowed in real or personal property, or both, or by decreeing to her such sums of money, payable either in gross or in installments as the Court deems equitable."

It is evident that an element in fixing an equitable allowance is the amount of property which the husband brought to the marriage and this, in the language of the statute, must be given due regard. $10,000 of the estate of plaintiff was owned by him at the time of his marriage. $5,000 thereof was afterwards loaned to him by his father and of the remainder all but approximately $4,500 came to him upon his father's death. It is essential that the source from which his holdings came be given consideration, together with the extent to which his estate had been increased by reason of the joint efforts of the parties.

The word "equitable" is flexible in meaning and of necessity varies as the facts vary. If punishment is the effect of a decree it can only be an incident or result of an equitable division of the offender's property. It cannot alone be the basis of any part of the order.

One of the briefs adverts to the probable present affluence of the plaintiff but we give no consideration to this suggestion because there is no support for it in the record, which is before us for review. However, we note that no part of the personal earnings of the plaintiff was or will be affected in any manner in providing support for the defendant and only slightly by the support order for his children and it is probable that he will have a satisfactory earning capacity.

Something is also said to effect that the defendant, according to her own admission, is able to earn a livelihood, both by teaching and as a seamstress. It is possible that she could earn something as a seamstress but if she gives the requisite care and attention to the two boys she may have no time to teach. It is altogether proper that she, as nearly as possible, be placed in a status which will assure her and the children that sense of security and financial independence which she had a right to expect, had the marital relation not been severed because of the derelictions of the plaintiff.

Some months prior to the hearing of the cause the wife had reconveyed to the husband a one-half interest in the Trotwood residence property and the Darke County farm, which the husband had theretofore deeded to her. Later the parties entered into a separation agreement, by the terms of which the husband was to pay the wife the sum of $500.00 and $5.00 per week to each of the children for their support, the wife releasing all of her rights in and to the property of her husband and specifically waiving any cause of action that she might have against any person growing out of conditions leading up to the separation. Later the wife signed a statement ratifying the separation agreement, in which latter statement there was set forth all of the property holdings of the husband and an acknowledgment by the wife of her knowledge of such holdings and the extent thereof. The court very properly set this separation agreemnt aside.

It fairly appears that the husband, by his machinations, admitted misrepresentations and deliberate falsehoods, induced the

wife to sign the separation agreement. It is also evident that by misstatements he caused her to deed her half of the real estate to him. Likewise, it appears that the separation agreement was wholly inequitable and manifestly unfair, both to the wife and to the children. The circumstances under which the deed was made to the husband, the separation agreemnt and ratification statement signed, together with the inadequate protection of the wife and children, and the facts developed in the case respecting the affair between the husband and another woman, all very properly put the court upon notice that plaintiff was an unstable and undependable person. This knowledge made it advisable to set aside sufficient of the property of the husband to make certain that the support money would be forthcoming. Thus no proper objection can be urged against the precautionary measures which the Court took to assure that the support money for the children would be paid out of assets of the husband then available instead of depending only upon an order that he personally pay them a given sum per month. The present award to the defendant is not excessive, nor would an allowance be objectionable of a further sum now or later from that portion of the holdings of plaintiff which were put in trust for the support of the children.

· We find no objection to the personnel of the trustees. If there is to be a trust, it was appropriate that the mother, who was awarded the custody of the children and who will in all probability have to attend their welfare, should be a trustee to manage the property from which they were to receive support and that her attorney, who is qualified to handle the legal features of the trust and advise as to the business conduct thereof, should likewise be nominated.

However, we are of opinion that the Court exceeded its authority in extending the benefits of the trust to the children beyond their respective ages of majority. This follows because the obligation of a father, under the law, to support his child terminates when he reaches the age of twenty-one.

· The order that at the termination of the trust, if both plaintiff and defendant were dead the corpus of the trust should pass to their heirs, likewise was over and beyond the authority of the Court. In this respect if the children had attained their majority the order was a disposition of property which should have belonged to both plaintiff and defendant, which is not contemplated in a support order and might, and probably would, result in passing title to the children at a time when neither the plaintiff nor the defendant was under obligation to support them and take away from the parties their right to dispose of their own property at death. The only award which can properly be made for and on behalf of the children is that which assures their support during minority. The Court cannot control the devolution of property from parent to child upon any basis of support money when and after that child has reached an age when the parent is no longer under legal obligation to provide for him.

We do not say, as a matter of law, that the Court exceeded its authority in making provision that, if at the termination of the trust the plaintiff should be dead, all of the corpus should pass to the defendant and that if the defendant be dead, all of it pass to the plaintiff, but are satisfied that such an order in this case might become highly inequitable. Especially would this be true if at the termination of the trust the plaintiff was dead without will. Under the decree all of the corpus of the trust would pass to the defendant, representing an aggregate sum in excess of that which would be a just allowance to her in the light of the statute. In this situation the children would be denied a share of that which they would have inherited from their father, but for the trust decree.

The trust provision is unnecessary to accomplish the result desired. It ties up not only the $20,000 Building and Loan stock, but also the residence property and the farm, requires control and management of all of the corpus of the trust and names two trustees. The administration of this trust would of necessity entail considerable cost. The support money required for the children should be secured with a minimum of expense and a minimum diminution of any assets set aside for that purpose.

The result of our consideration of the support decree and alimony award as set up in this trust provision is such that we cannot approve them in the form in which they now stand.

The net amount of money available to the children for support money under the

trust fund as fixed by the trial court will approximate $1200.00 per year. This sum is not excessive. It will be assured by requiring the plaintiff to pay the sum of $50.00 per month for each of the children until Robert reaches the age of twenty-one, then the sum of $50.00 per month for the support of Kent until he reaches the age of maturity; if either dies before he reaches the age of twenty-one the sum of $50.00 to be paid to the survivor until he is of the age of maturity.

This payment for support may be assured by making it a charge upon the certificates in the Gem City Building & Loan Association in the sum of $20,000.00 and the Association directed to pay the income from said certificates directly to the guardian of the children. The plaintiff will be required to pay within 10 days after dividends are paid the difference between the monthly income from the Gem City Building & Loan certificates and the total amount fixed in the support order. The principal sum of the certificates may also be made available to meet the order as to support if for any reason the plaintiff does not promptly comply with the order. The Court retains continuing jurisdiction of the support order for the children and may, if advisable, order the Building & Loan certificates sold and proceeds reinvested.

The defendant, the mother of the children, can and should, with little expense, be duly appointed as the guardian of their estate. This support order will preclude the necessity of placing the dwelling house in Trotwood and the farm under management of the trustees and release these properties for further consideration of the Court.

If both children die before Robert reaches the age of twenty-one, if not, when Robert attains or would have attained his majority, the defendant will be awarded the further sum of $5,000.00 from the proceeds of the certificates of the Building & Loan Association set aside for the support of the children. The residence property in Trotwood will also be awarded to the defendant.

Another assignment of error is that the Court erred in assessing attorney fees for defendant's counsel against the plaintiff and making such an allowance a lien against certain of his property. No objection is made nor could properly be asserted to the amount of the fee. The form in which it was awarded is irregular and it is not strictly in accord with the finding of the trial judge, although of course we are bound by the journal entry. See **Reibel v Reibel, 15 Abs 233.**

It will be ordered that the plaintiff pay to the defendant the sum of $1,000.00 as and for her attorneys' fees and the restraining order against the disposition of the certificates of deposit with the Montgomery Building & Loan Association will not be dismissed until this payment is made.

Exceptions are noted to the award of the custody of the children to the defendant, allowing the right of visitation to the plaintiff only during the months of July and August. Under all the circumstances of this case the plaintiff should have the right of visitation with his children at more frequent intervals than those fixed by the decree. It is a mistake to prevent by order of court any companionship of father and sons for ten months of the year. Further right of visitation should be accorded to the plaintiff at week-ends. This can be done without in any wise interfering with the education of the children. The order of the trial court will be modified by extending the right of the plaintiff to visit his children or to have them with him on Saturday or Sunday, at intervals of two weeks at his election. Election to be made before this decree is journalized. This custodial order is subject to modification if changed conditions require.

We restate the modification of the decree. Defendant, as and for her alimony and support, is awarded the residence in Trotwood, the Mutual Home certificates, deposits in Phillipsburg Bank and Farmers & Citizens Bank, household goods, and plaintiff is ordered to pay her the sum of $1,000.00 for her attorneys' fees under the conditions heretofore set forth.

When the support order for the children terminates defendant is to have the further sum of $5,000.00.

For the support of the children the plaintiff will be required to pay the sum of $50.00 per month to each on the terms and under the conditions heretofore set forth.
Judgment modified accordingly.

BARNES, PJ, HORNBECK & GEIGER, JJ. concurring.