[Crim. No. 2211. In Bank.—December 13, 1918.]

## In the Matter of the Application of GUY S. GARNER for a Writ of Habeas Corpus.

CONTEMPT—MAXIMUM PUNISHMENT—CONSTITUTIONALITY OF CODE PRO-
VISION.—Section 1218 of the Code of Civil Procedure, which limits
the power of a court to punish for a constructive contempt to a fine
of not exceeding five hundred dollars, or imprisonment not exceed-
ing five days, or both fine and imprisonment, is not unconstitutional
as an infringement of the inherent power of a court to punish for
contempt.

ID.—PUNISHMENT FOR CONTEMPT—POWER OF LEGISLATURE.—The legis-
lature may not, whether by procedural rules or the inadequacy of
the penalty fixed, substantially impair or destroy the implied power
of the court to punish for contempt, yet it may provide rules of
procedure and fix the maximum penalty which, if adequate for the
purpose designed, must be deemed operative in controlling the action
of the court.

PROCEEDING on Habeas Corpus originally instituted in
the Supreme Court. Petitioner discharged from custody.

The facts are stated in the opinion of the court.

Newlin & Ashburn, for Petitioner.

Edgar W. Camp and Joseph L. Lewinsohn, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—Petitioner, in that he
was found guilty of unlawfully interfering with the process
of the court, was adjudged guilty of contempt, and as punish-
ment therefor he was sentenced to pay a fine of five hundred
dollars and be confined in the county jail for a period
of *ninety days.* Upon payment of the fine and after five
days' imprisonment in the county jail, a writ of *habeas
corpus* was issued, the return to which shows that petitioner
was found guilty of acts similar to those involved in *Ex
parte Buckley*, 69 Cal. 26, [10 Pac. 69]. That such acts con-
stituted contempt must be, and is for the purposes of this
case, conceded.

Section 1218 of the Code of Civil Procedure provides:
"Upon the answer and evidence taken, the court or judge

must determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding five hundred dollars, or he may be imprisoned not exceeding five days, or both.'' The sole question presented is as to the validity and binding force of this provision of the statute, it being the claim of respondent that the legislature has no power to enact a law, however reasonable, limiting the power of a constitutional court in imposing punishment for contempt. This contention is based upon the fact that since the court, without restrictions as to its power to impose punishment for contempt, is created by the constitution, it, as to such an offense, and subject to the provisions of the constitution (article I, section 6) that forbids the imposition of excessive fines and the inflicting of cruel and unusual punishment, possesses all the powers of a court of justice as it existed at common law, among which in such matters was the exercise of unlimited power.

Except as amended in 1871, when the word ''must'' was substituted for the word ''shall,'' the statute is identical with the act of the legislature adopted in 1851, designated as section 488 of the Practice Act. Until now, due to the fact that the courts of the state have accepted it as the law pertaining to the subject, no occasion has arisen for questioning the validity of this provision, which by reason of a venerableness rarely attained by a statute of this state should have rendered it immune from the attack made.

Beginning at an early date we find this court in cases where the point was not directly involved, and hence subject to the criticism that what was said was *dicta*, giving expression to language which clearly recognized that the power of courts to impose punishment for constructive or ''out of doors'' contempt was restricted as provided by statute. In the case of *Ex parte Cohen*, 6 Cal. 318, decided in 1855, where the alleged contempt consisted in the refusal of petitioner to comply with an order, the court said: ''Under our statutes, the power of a court to punish for a contempt is limited to a fine of five hundred dollars and imprisonment for five days, except (as provided in sec. 1219, Code, Civ. Proc.), when the contempt consists in the omission to perform an act which is yet in the power of a person to perform, in which case he may be imprisoned till he have performed it.''

In *Ex parte Rowe,* 7 Cal. 176, in discussing the power of the court to impose punishment, the court said: "But the exercise of this power is regulated by the statute."

In *Galland* v. *Galland,* 44 Cal. 475, [13 Am. Rep. 167], petitioner had been adjudged guilty of contempt in the failure to obey an order of court requiring him to pay alimony, and this court, in the course of the opinion filed therein, said: "In this state the power of courts to punish for contempt has been regulated by statute. It is provided that when one is adjudged guilty of contempt he may be punished by a fine of not exceeding five hundred dollars and by imprisonment for not exceeding five days, except when the contempt consists in the omission to perform an act which is yet in his power to perform. . . . This is a limitation upon the power formerly exercised by courts to punish for contempt."

In the *Matter of Tyler,* 64 Cal. 434, [1 Pac. 884], where a fine was imposed as punishment for the adjudged contempt, the court, speaking on the question as to the power of the court to enforce payment thereof by imprisonment, said: "It [the court] had jurisdiction to punish by fine not exceeding five hundred dollars, or imprisonment not exceeding five days, or by both."

In *Ex parte Abbott,* 94 Cal. 333, [29 Pac. 622], Chief Justice Beatty in passing upon a like question used language as follows: "The limit of punishment there [section 1218] prescribed is a fine not exceeding five hundred dollars, or imprisonment not exceeding five days, or both." To like effect is the language of the same learned judge in the concurring opinion in the case of *Ex parte Todd,* 119 Cal. 58, [50 Pac. 1071].

While it may be conceded that these quoted expressions were *dicta,* nevertheless such recognition of the validity and binding force of the statute, together with long acquiescence therein, furnish, as said in *People* v. *Richards,* 1 Cal. App. 566, [82 Pac. 691], "an almost irresistible reason for not overturning it."

No doubt exists as to the inherent power of a constitutional court, in the absence of statutory provision therefor, to impose punishment for a contempt. Its very existence depends upon the exercise of such power. Hence, it may be conceded that a statute without constitutional authority therefor, which takes from the courts all power to punish for contempt, or

fixes a penalty wholly inadequate for the purpose, would not be countenanced by the courts. Nevertheless, and while in such cases conceding the existence of such power vested in the courts, we are not prepared to adopt respondent's theory that our constitutional courts possess inherent power to the full extent as did the courts of England, which in some cases we find imposed enormous fines and imprisonment for years. To do so would not only be inconsistent with the spirit and genius of our institutions, but likewise, would be tantamount to a denial of legislative power to regulate the practice and procedure by which our courts are governed, a power which, without constitutional authority, is universally recognized in all states where the code system of pleading and practice prevails. The validity of such regulations has been repeatedly upheld in this state. Thus in *Ex parte Harker*, 49 Cal. 465, where it is said: "The mere procedure by which jurisdiction is to be exercised may be prescribed by the legislature, unless, indeed, such regulations should be found to substantially impair the constitutional powers of the Courts, or practically defeat their exercise." To like effect are the cases of *In re Jessup*, 81 Cal. 408, [6 L. R. A. 594, 22 Pac. 742, 1028], *Smith* v. *Westerfield*, 88 Cal. 374, [26 Pac. 206], and *United Railroads* v. *Superior Court*, 170 Cal. 755, [Ann. Cas. 1916E, 199, 151 Pac. 129]. Likewise it is held that in proceedings for contempt the court, in order to acquire jurisdiction over persons against whom the proceeding is had, must comply with the regulations adopted by the legislature therefor. In the absence of a provision covering the particular case, or where it is inadequate, no doubt but such constitutional court by virtue of its inherent power, may itself prescribe appropriate provision for acquiring jurisdiction and adopt the procedure to be followed. Notwithstanding this recognized right of invasion upon the inherent powers of the court as to rules of practice and procedure which counsel for respondent must concede, they deny to the legislative body the right to restrict the action of the court in imposing penalty. If, however, the legislative power may go to the extent of prescribing adequate rules of procedure by which the courts are controlled, we perceive no reason why they should not likewise be controlled as to the measure of punishment to be inflicted in "out of doors" contempt proceedings, *provided* the penalty so fixed

be sufficient to enable the courts to vindicate their authority and maintain the dignity and respect due to them.

The legislature may not, whether by procedural rules or the inadequacy of the penalty fixed, substantially impair or destroy the implied power of the court to punish for contempt, yet it may provide rules of procedure and fix the maximum penalty which, if adequate for the purpose designed, must be deemed operative in controlling the action of the court.

That the maximum punishment of five hundred dollars fine and imprisonment for five days, or both, as prescribed by section 1218 for the contempt involved in the instant case, which was a representation that for $50 paid to him petitioner could and would corruptly influence the judge of the court to render a wrongful decision, was not so small and insignificant as to impair the power of the court in vindicating itself and protecting its dignity, is shown by the fact that since its admission as a state, the courts thereof during periods of storm and stress such as few commonwealths have experienced, have found the penalty adequate for their protection. In addition to this fact it appears that in the severity thereof the penalty so fixed is more drastic than that contained in like statutes adopted in fourteen states of the Union, the constitutions of which, like our own, are silent upon the subject, and in fourteen other states having courts created by their constitutions, wherein no authority for the adoption of restrictive rules as to the power of the court in this respect is given, the statutes fix a maximum punishment of less severity than the penalty imposed herein by the lower court. It is worthy of note that in only three states—Georgia, Louisiana, and Virginia—does the organic law contain provisions of express grant of such power to the legislature, and yet, in so far as we are advised, the courts, with two or three exceptions, have not expressly held such statutes inoperative.

No good purpose can be served in reviewing the great number of authorities cited in the able and exhaustive briefs filed by counsel. Suffice it to say that many of them involve powers of legislative as distinguished from constitutional courts, while others relate to the power of the legislature to enact regulations governing procedure and trial in contempt cases. In 13 Corpus Juris, 93, it is said: ''When the duration of the imprisonment or the amount of the fine is limited

by statute, the punishment may conform to such limitation but cannot exceed it.'' Many cases in support of this proposition are cited by the author, some of which are pertinent to the precise question involved and many of them having no bearing thereon. Perhaps no court has given more careful consideration to the exact question under discussion than that of Missouri, where a like statute, adopted in the absence of constitutional authority, was in *State* v. *Shepherd,* 177 Mo. 234, [99 Am. St. Rep. 624, 76 S. W. 79], declared invalid and of no binding force upon the constitutional courts. Later this decision was followed by a majority opinion in the case of *Chicago etc. Ry. Co.* v. *Gildersleeve,* 219 Mo. 170, [16 Ann. Cas. 749, 118 S. W. 86], where Mr. Justice Lamm, whose judicial labors in that court constitute a monument to his industry and learning, filed an able and exhaustive dissenting opinion, concurred in by two of the justices, wherein he reviewed a great number of cases and upheld the validity of the statute. In the subsequent case of *Ex parte Creasy,* 243 Mo. 680, [41 L. R. A. (N. S.) 478, 148 S. W. 914], the validity of the statute as a limitation upon the power of the court to inflict a penalty for contempt in excess of that provided, was attacked, and the court adopted the views thereon enunciated by Justice Lamm in his dissenting opinion in the Gildersleeve case.

Judges are but human, and as said by Lord Camden in the trial of Hindson and Kersey, found in 8 Howell's State Trials, 58: ''The discretion of a Judge is the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends upon constitution, temper, passion. In the best it is oftentimes caprice; in the worst it is every vice, folly, and passion; to which human nature is liable.'' And hence, as said by Judge Taft in *City of Detroit* v. *Detroit City Ry. Co.,* 54 Fed. 1, where ''influences of a personal nature are present we must presume a human weakness in all judges to prevent injustice from the frailty of a few.'' Recognizing this human frailty, a judge, since as we hold it is not necessary in vindicating his authority nor in maintaining the dignity of the high and exalted office which he occupies, should not have unbridled power to summarily commit a citizen to prison for a term of years, however long, for a constructive contempt.

It is no answer to this, as suggested by respondent, to say, in the language of Chief Justice John Marshall, that "all delegated power is liable to be abused," nor that the constitution affords protection in that it prohibits the infliction of cruel and unusual punishments, since this inhibition relates to the character of the punishment, and imprisonment is neither cruel nor unusual. (*State* v. *McCauley,* 15 Cal. 429.)

Nor is there any merit in the suggestion based upon *Ex parte Karlson,* 160 Cal. 378, [Ann. Cas. 1912D, 1334, 117 Pac. 447], that contempt is a matter of price, since a poverty-stricken contemnor fined five hundred dollars and committed to prison until the fine is paid must, on account of his financial inability, suffer imprisonment, whereas a man of means subjected to a like fine and conditional penalty may escape imprisonment by paying the fine at once. Like arguments would apply in every criminal case wherein a man is subjected to a fine and committed to prison until it is paid.

Petitioner having paid the fine of five hundred dollars imposed, and served five days' imprisonment in jail, it is ordered that he be discharged from custody.

Sloss, J., Richards, J., *pro tem.,* Melvin, J., Lorigan, J., and Angellotti, C. J., concurred.