[Civ. No. 3817.   Fourth Dist.   Feb. 9, 1948.]·

WILLIAM STERN, Respondent, v. AMELIA S. STERN, Appellant.

Maurice Rose for Appellant.

Thompson & Colegate for Respondent.

GRIFFIN, J.—Plaintiff and respondent was married to defendant and appellant on March 24, 1942. They were separated on March 18, 1946. On April 11, 1946, plaintiff commenced this action for divorce on the ground of cruelty. Defendant appeared through her attorneys, Jerry Giesler, Esquire, Meyer M. Willner, Esquire, and Messieurs Best, Best & Gabbert. Thereafter, an amended complaint was filed. Defendant answered and by way of cross-complaint sought a decree of separate maintenance. (Later, in a second amended cross-complaint, she sought a divorce.) Among other relief, she asked that the community property be divided. She then alleged that plaintiff's age was 63; (he had been suffering from a severe illness requiring over 21 major surgeries, and was retiring in Palm Springs for his health); that his net worth was in excess of $150,000, and that he had a monthly income from *his* properties in excess of $800 and insurance annuities in excess of $360 per month. Plaintiff alleged that there was no community property acquired during the four years they were living together as husband and wife. In July, 1946, the case was at issue and in October, 1946, was set for trial for February 4, 1947, before the Honorable O. K. Morton, Judge. On January 28, 1947, a motion was made by defendant's counsel for an order permitting them to withdraw from the case due to disagreement between defendant and her counsel. In support of that motion an affidavit was filed by Mr. Best reciting that negotiations were pending for a settlement; that until January 24, 1947, he was of the opinion that the case would be settled and not tried; that prior thereto he notified defendant that if the case was not settled and it became necessary to try it her then counsel would not be able to conduct the trial thereof; that affiant and her other counsel have not been able to agree as to the "conduct of the trial." A copy of the affidavit and motion was mailed to defendant on January 28, 1947. On the same day Mr. Best filed a notice of motion for a continuance, accompanied by an affidavit of Mrs. Stern, reciting that on February 3, 1947, the defendant would move for a continuance of the trial due to the fact that her counsel had withdrawn; that she had arranged to employ other counsel and that there was not sufficient time for said counsel to prepare for trial. On January 28, 1947, another such motion was filed by Attorney Best seeking a continuance of the trial for the claimed reason that the

instant attorney employed by defendant had withdrawn as her counsel and that she "had arranged to employ other counsel." This application was opposed by plaintiff. On February 3, 1947, the day previous to the date originally set for the trial, the motions were argued. The original attorneys for defendant were permitted to withdraw from the case. The motion for continuance was continued to February 4, 1947, for further hearing.

Attorney Carl Davis appeared and stated that he would appear for his firm and represent the defendant at that time. On February 4, 1947, on the day of trial, Mr. Davis moved for permission to withdraw from the case, which motion was granted and the trial of the case was ordered for 2 p. m. on that day. Defendant appeared in the afternoon with another attorney, Mr. Briskin, who moved the court for a continuance until March 6, 1947. The motion was granted. On February 28, 1947, plaintiff and defendant appeared with their respective counsel before Honorable Russell S. Waite, Judge of Department 1. It was there stipulated that the cause "may be heard forthwith, and without further notice." Plaintiff offered no evidence. Defendant and cross-complainant was sworn and examined. The court then noted in its minutes that defendant did not desire to proceed with the hearing, and an entry was made ordering that the case remain set for trial on March 6, 1947, in Department 2. On February 28, 1947, defendant filed a substitution of attorneys, substituting Maurice Rose, Esquire, in the place and stead of Mr. Briskin, and also filed a dismissal of defendant's second amended cross-complaint. Defendant filed an action in Los Angeles County on March 3, 1947, between the same parties and asked for a rescission of the property settlement agreement she had signed. She then filed, on March 5, 1947, a motion to dismiss the entire action based on the ground that plaintiff failed to prove any case on February 28, 1947, in support of his complaint and that he had, on that occasion, "declared" a dismissal thereof. She noticed this motion to be heard on March 10, 1947, as well as a motion to stay or continue the trial of the Riverside County action until that action was determined, or until she was prepared for trial. These motions were denied on *March 10, 1947,* by Judge Waite, after Judge Dehy had granted the divorce.

On March 5, 1947, defendant also filed an objection to going to trial before Judge Morton, upon the ground that he was disqualified under section 170, subdivision 5 of the Code of Civil Procedure. A voluminous affidavit in support of the claimed disqualification was filed by defendant. On March 6, 1947, Judge Morton transferred the case to another department presided over by Honorable William D. Dehy, who had been and was then sitting in said county by appointment of the Judicial Council. Counsel for defendant then challenged Judge Dehy's qualifications to proceed at the trial on the claimed ground that Judge Morton had no power or jurisdiction to assign the case to Judge Dehy, under section 170 of the Code of Civil Procedure. He ordered the case to proceed. Mr. Rose refused to participate in the trial. Evidence was produced by plaintiff. Defendant produced no evidence. The court found that no community property had been acquired by the parties during their marriage; that the property standing in plaintiff's name was his separate property. It found acts of cruelty were inflicted on plaintiff by defendant, denied defendant any relief and granted a divorce to plaintiff. A decree was entered accordingly. On March 24, 1947, defendant filed a motion for new trial. It was set for hearing on May 1, 1947, before Judge Dehy by Judge Waite. Defendant filed another voluminous affidavit in support of the motion for new trial. On March 24, 1947, defendant filed a bias and prejudice affidavit against Judge Dehy. His written denial thereof was apparently not filed until after the date of its verification, which was on April 18, 1947, more than five days after the filing of the affidavit of prejudice. On April 14, 1947, defendant filed a motion to vacate the findings and the interlocutory decree and objected to the hearing of such motions by Judge Dehy. On April 17, 1947, Judge Waite ordered that said motions be heard on May 1, 1947, in Department 2, before Judge Dehy. On April 25, 1947, the county clerk notified the chairman of the State Judicial Council of the fact that the written objections to any further hearings before Judge Dehy had been filed and that the judge failed to deny his disqualifications to act within five days and that the parties had not agreed upon a judge to determine the matter of Judge Dehy's disqualifications. Mr. Rose wrote the county clerk that he would not be present on May 1st, because he was busy in court in Los Angeles, and further

that his client objected to any hearing before Judge Dehy; that he did not ask for any adjournment; that "as an observer" he "would have made no motion"; that "therefore my absence will make no difference"; and on April 28, 1947, the Chairman of the Judicial Council directed by letter that the question of Judge Dehy's disqualifications be heard before Judge Morton. Judge Morton, after writing his reasons, graciously declined and suggested the name of Judge Waite. On May 8, 1947, about the time defendant filed her notice of appeal, there was filed an assignment of Judge Waite to hear and determine Judge Dehy's claimed disqualifications. On May 1, 1947, plaintiff and his counsel appeared in Judge Morton's court (Department 2). Defendant was present without counsel. Plaintiff moved to transfer the pending matters to Judge Waite's court. Judge Morton, as presiding judge of the several courts, held that since the hearing was noticed "before Judge William D. Dehy," and was so assigned by Judge Waite, the matter was not properly before him for determination; that a motion for new trial must be heard and determined by the judge who presided at the trial except in case of the inability of such judge or in case of his absence from the county wherein the trial was had; that since Judge Dehy was then holding court in that county on that day, he refused to make any further order in reference thereto. The court then requested the bailiff to "assist" defendant in finding the department in which Judge Dehy was holding court. The minutes of Judge Dehy's department show that on May 1, 1947, at 10 a. m. plaintiff and his counsel were present and defendant was present without counsel. Plaintiff moved that the cause be transferred to Department 1 for hearing before Judge Waite, due to the fact that Judge Dehy was disqualified because he failed to file his written denial of his claimed disqualifications within five days. The motion was granted.

In Department 1, before Judge Waite, with the same parties present, plaintiff moved that court for an order denying the motions of defendant for a new trial and to vacate findings and the interlocutory judgment of divorce. Defendant's motions were denied. Defendant now appeals from (1) the interlocutory judgment of divorce. (2) From the order of Judge Waite denying defendant's motion for new trial and the motion to vacate the findings and judgment.

She also seeks to review the following orders: (a) Minute order of Judge Morton of March 6, 1947, assigning the case to Judge Dehy, without the agreement thereto of the parties, after the filing of a disqualification affidavit against Judge Morton on March 5, 1947. (b) The minute orders of Judge Waite made on April 11, 1947, and on April 17, 1947, setting the motions for hearing and requesting Judge Dehy to sit and act in Department 2 on May 1, 1947, and to then and there hear defendant's motion for a new trial. (c) The order of May 1, 1947, by Judge Morton requesting the bailiff "to assist" defendant in finding Department 2. (d) The order made on May 6, 1947, by Judge Dehy, transferring the said motions to Judge Waite's department.

As to the question arising under review of the order lettered (a) in reference to the assignment of the action, on March 6, 1947, by Judge Morton, who was also denominated presiding judge, to the department then presided over by Judge Dehy, who had been previously assigned to sit in that county in extra sessions, after a disqualifying affidavit had been filed on March 5, 1947, against Judge Morton, it appears that it has been partially answered in the case of *People* v. *Hickman,* 204 Cal. 470, 480 [268 P. 909, 270 P. 1117]. With but one exception the case is factually similar in reference to the claim that Judge Dehy was without jurisdiction to try the cause. It was there stated that:

"When this cause came on for trial, objection was made to proceeding before the judge who had taken and entered the pleas, upon the ground that he was biased and prejudiced against the defendant. The judge filed a denial of bias or prejudice, but, upon the ground that he desired to avoid arresting the trial by a protracted hearing with reference to his qualifications, and in order that the cause might be heard and determined with the least possible delay, consented to retire from the case. The presiding judge *thereupon* made and caused to be entered an order that the trial proceed before another judge of the superior court, then sitting in the Los Angeles court under assignment by the chairman of the judicial council. The procedure followed was in strict accord with the terms of the constitutional provision, *supra,* and with section 170 of the Code of Civil Procedure." (Italics ours.)

In the instant case a disqualifying affidavit had been filed against the so-called presiding judge. In that case there had

not been such an affidavit filed against the presiding judge. Had Judge Morton been the one and only judge presiding in that county when the affidavit of prejudice was filed as to him and he failed to answer it within the five days, under section 170, subdivision 5 of the Code of Civil Procedure, the *action* could then only be heard by a judge not disqualified, who may be agreed upon by the parties, or in the event of their failure to agree, by one appointed by the chairman of the Judicial Council. But under the proviso in that same paragraph, when there are two or more judges of the same court, as here, one of whom is disqualified, the action or proceeding may be transferred to a judge who is not disqualified. The act does not designate which judge should execute the transfer or make the assignment. In the Hickman case the presiding judge made the assignment or transfer. In the instant case the so-called presiding judge was also the trial judge who was about to proceed with the trial of the action.

Defendant's counsel argues that, under the last paragraph of that subdivision, since defendant did not agree upon the judge to which the case could be assigned, Judge Morton, either as the presiding judge or as trial judge, had no power to assign the case to Judge Dehy; that only the chairman of the Judicial Council could, under the circumstances, assign the case for trial before another judge and therefore no judgment rendered by Judge Dehy was valid. There is language in *Rosenfield* v. *Vosper,* 70 Cal.App.2d 217, 223 [160 P.2d 842], supporting defendant's contention. However, the statement there made was not necessary to the decision in that case and is opposed to the holding in *People* v. *Hickman, supra,* which is to the effect that the presiding judge may order that the trial proceed before another judge, where there are two or more judges of the same superior court.

While it is clear that a disqualified judge may not assign or designate a particular judge to *hear and determine the question of his disqualification,* it does appear from the proviso that the *case* may be assigned to another department for trial.

Article VI, section 7 of the Constitution provides: "The judges of each superior court in which there are more than two judges sitting, shall choose, from their own number, a

presiding judge, who may be removed as such at their pleasure. Subject to the regulations of the judicial council, he shall distribute the business of the court among the judges, and prescribe the order of business."

Rule VIII of the rules of the Judicial Council pertaining to the superior courts (213 Cal. lxxxv) provides that "In all counties having a Presiding Judge, cases shall be set for trial under the supervision of the Presiding Judge. In all other counties, cases shall be set for trial under the supervision of the judge or judges thereof." (See, also, rule XXI.)

In Riverside County the Legislature has created only two departments of the superior court, in which case it seems logical that under the circumstances where a disqualifying affidavit is filed against the trial judge, and to avoid possible delay in determining the question of his disqualification, he consents to retire from the case, he should be permitted to immediately assign the action to another department and before a judge who is not disqualified. Therefore, there was no prejudicial error committed in the assignment, by Judge Morton, of this action for trial before another department of the superior court of that county and before a judge then duly assigned by the chairman of the Judicial Council to so act. (*People* v. *Hickman, supra; Petition of Los Angeles Trust Co.,* 158 Cal. 603, 608 [112 P. 56] ; *White* v. *Superior Court,* 110 Cal. 60, 66 [42 P. 480].) As indicative of the legislative intent in this respect, see, also, section 170.5 of the Code of Civil Procedure (held unconstitutional for certain reasons there indicated in *Austin* v. *Lambert,* 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849].)

█ The same conclusion, that there was no prejudicial error committed, must be reached in respect to the assignment by Judge Dehy of the hearing on the motion for new trial to Judge Waite's department, which judge was the one and only judge remaining who was not disqualified. (*Matthias* v. *DeLucchi,* 21 Cal.App.2d 718 [69 P.2d 1005].) See, also, rule XIII of the Rules of the Superior Court, *supra.*

Judge Waite had jurisdiction to hear and determine the motions transferred to his court and the transfer of the cause to his department by Judge Dehy, under the circumstances, rather than a transfer by a presiding judge, did not prejudice defendant's rights. (*Petition of Los Angeles Trust Co., supra; Bradley* v. *Van Nostrand,* 189 Cal. 457 [208 P. 690] ; rule XIX, subd. 4, *supra.*)

■ Since the evidence supporting plaintiff's allegation in his complaint as to extreme cruelty is quite substantial, the remaining questions will be considered in connection with defendant's claim of error in reference to the ruling of the court in refusing to grant defendant further continuances.

As formerly noted, on October 7, 1946, the original trial date was regularly fixed for February 4, 1947 (nearly four months after issues were joined and the case was set for trial.) Defendant, through her first set of attorneys, was negotiating as to the terms and amount that plaintiff would offer defendant by way of settlement of her claims. From a letter to her from her attorneys it appears that at least 30 days prior to the trial date defendant was informed that if she did not accept the offer made by plaintiff these particular attorneys would not act as her trial lawyers and it would be necessary to obtain some other lawyers if she elected to go to trial. At least 30 days prior to the trial date Mr. Best notified counsel for plaintiff that if defendant did not accept the offer he would withdraw from the case. Counsel for plaintiff signed an affidavit opposing any continuance and further alleged that on January 24, 1947, Attorney Davis came to his office, with defendant's papers, which he believed Mr. Best had turned over to him, and stated that he had been retained by Mrs. Stern; that he told Mr. Davis that he could not consent to any continuance and explained as a reason that the case had been pending for many months, had been set for trial for a long time and that certain Illinois property was involved; that he was ready for trial and had subpoenaed many witnesses from out of the county. Defendant's motion for continuance was made on February 3, 1947. The trial court continued the motion until February 4, 1947, at 10 a. m., the date set for the trial of the action. Attorney Davis then withdrew from the case and a continuance was granted until 2 p. m. Mr. Briskin then appeared as defendant's attorney and the case was continued for trial to March 6, 1947, in Department 2. The proceedings of February 28, 1947, in Department 1, where counsel stipulated that the case might then be heard without further notice as a default matter based upon the cross-complaint indicate that defendant, through someone's advice, other than Mr. Briskin, intended to lead counsel for plaintiff into a trap by having him dismiss plaintiff's complaint and then in the middle of her testimony dismiss her cross-complaint, leaving no action

pending against either party. However, the record shows that counsel for plaintiff did not dismiss plaintiff's cause of action. He merely announced: "At this time the plaintiff does not now offer any evidence in support of the complaint." Mr. Briskin gracefully withdrew from the case and Mr. Rose, who was seated in the courtroom, was substituted in his stead. Mrs. Stern stated to the court from the witness stand: "I want to tell you, Mr. Rose came here to defend me." No ruling was made as to defendant's personal request to dismiss the cross-complaint. The trial court announced, in open court, and ordered that the case remain on the trial calendar of Department 2 for March 6th. It was at that time Mr. Thompson announced that this is "the eighth attorney that has represented Mrs. Stern" and "this is the third time, in the middle of a proceeding, one attorney has withdrawn and somebody else has stepped into the case. . . . This matter cannot continue indefinitely, or it will exhaust the entire bar of the State of California."

There is evidence that Mr. Rose had been previously consulted by Mrs. Stern. Up to this point, surely, defendant could not complain of the trial court's rulings in reference to a continuance. On the trial date no request for continuance was made. Judge Morton, in Department 2, against whom a disqualifying affidavit had been filed, apparently admitted his disqualifications and assigned the case to Department 3, Judge Dehy's department. The question of the validity of this assignment has been heretofore covered.

Mr. Rose then appeared in Department 3 before Judge Dehy. He had previously dismissed defendant's cross-complaint. He then objected to "any further proceedings" and asked for a continuance of 30 days because he "believed this matter would come up before Judge Morton" and since he filed an affidavit of prejudice against him, he did not believe the case would be heard until his disqualification was determined by some judge assigned by the chairman of the Judicial Council. The trial court was then requested by defendant's counsel to read affidavits in support of a motion for continuance, which motion was to be heard on March 10, 1947. The judge, at his request, continued the case until 2 p. m. "to look over the files and go through them." The judge then addressed Mr. Rose and stated that he was denying his application for continuance. Mr. Rose then replied to the court: "The application (for continuance) was withdrawn. I said

I would not participate on the ground the court is without jurisdiction.''

It rather clearly appears from the record that counsel for defendant was therefore relying solely on his claim that Judge Dehy had no jurisdiction to try the action on the ground that Judge Morton had assigned the action to that department for trial after a disqualifying affidavit had been filed against him and that he abandoned his application for a continuance on the grounds specified in his affidavit. Mr. Rose remained in the courtroom throughout the hearing as an ''onlooker.''

The question of Judge Dehy's jurisdiction to hear said cause has heretofore been decided against defendant's claim. While the trial court might have been fully justified in granting a continuance under the facts related if that question were properly before him, it definitely appears that counsel withdrew or abandoned his application for a continuance and elected to rest his point on the question of *jurisdiction* of the court to act. Under these circumstances, and in view of the showing made under the affidavits submitted, it cannot be said that Judge Dehy had no *jurisdiction* to proceed or that he abused his discretion in proceeding with the hearing at that time.

Judge Waite, on April 11th, according to his affidavit, fixed May 1st as the time, and Department 2 as the place, and named Judge Dehy to hear and determine the motion for new trial and motion to set aside the interlocutory decree at the personal request and suggestion of defendant herself. He stated also that at the time she remarked that she was requested by her attorney, Mr. Rose, to contact the court for that purpose; that he (Judge Waite) told her Judge Morton had declared himself to be disqualified and that was the reason he was setting the matter for hearing. Defendant filed an affidavit refuting, to some extent, these statements of Judge Waite. Mr. Rose had notice of the time and place of hearing of said motions. Instead of appearing at that time and place and asking for a continuance, he apparently relied solely on his belief that Judge Dehy had no legal right to assign the hearing on the motions to the one and only remaining judge in that county who was not disqualified. (We have disposed of this question adversely to defendant.) In his letter Mr. Rose specifically states he intended to be in Judge Dehy's court on May 1st only ''as an observer''; that since his client

objected to any hearing before Judge Dehy, *"I do not ask for any adjournment.* [Italics ours]. . . . As an observer I would have made no motion." Defendant's counsel, therefore, again relying solely on his belief that Judge Dehy had no right or jurisdiction to transfer the hearings on the motion to the only remaining judge in that county not disqualified, should not now be allowed to claim prejudicial error and abuse of discretion on the part of the court in not continuing the matter to a subsequent date.

Judgment and orders affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied March 8, 1948, and appellant's petition for a hearing by the Supreme Court was denied April 1, 1948.