[L. A. No. 21859.   In Bank.   Nov. 21, 1952.]

JOHN F. DONOVAN, an Incompetent, et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

John F. Donovan, in pro. per., and Aileen M. MacLymont for Petitioners.

Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Deputy County Counsel, for Respondents.

SPENCE, J.—Petitioners, John F. Donovan and Jeanette G. Donovan, seek the annulment of a judgment of contempt in which they were fined respectively $2,000 and $4,500. They contend that the trial court was without jurisdiction to render the judgment, and that the fines imposed are excessive and constitute "unusual punishment" in violation of the Eighth Amendment to the federal Constitution and article I, section 6 of the California Constitution. We have concluded that these contentions cannot be sustained and that the judgment must be affirmed.

It was not until August 29, 1952, being long after the commencement of this proceeding, that petitioner John F. Donovan was adjudged to be an incompetent and John F. Cownie was appointed guardian of his person and estate. Upon the filing of a certified copy of the letters of guardianship, an appropriate order of substitution was made by this court and a joint brief has been filed herein by counsel representing both petitioner Jeanette G. Donovan and petitioner John F. Donovan, appearing by his said guardian.

The contempt proceedings arose out of alleged violations of a permanent injunction issued upon a judgment entered

on November 26, 1945. This judgment was affirmed in *Donovan* v. *City of Santa Monica,* 88 Cal.App.2d 386 [199 P.2d 51], and is now a final judgment determinative of the rights of the parties. The injunction restrained petitioners from using, occupying or maintaining the real property at 136 Georgina Avenue, Santa Monica, California, for any purpose other than a single-family dwelling. It also required the removal of several apartments and the reconversion of the main building into a single-family residence.

Petitioners contend that the issues involved in the action culminating in the November 26, 1945, judgment were res judicata because they had been settled by a stipulation entered into during a certain criminal trial in the Police Court of Santa Monica in April, 1940. ▇ This contention does not appear to be tenable, but the merits of the claim need not be discussed as the plea of res judicata does not present for review a question of jurisdiction under sections 1068 and 1074 of the Code of Civil Procedure. (*Baird* v. *Superior Court,* 204 Cal. 408, 412 [268 P. 640]; *Lincoln* v. *Superior Court,* 22 Cal.2d 304, 308 [139 P.2d 13].) ▇ Furthermore, petitioners cannot make this contention for the first time in their petition in this proceeding. Where there is an opportunity to do so in the trial court, the former judgment must be pleaded in order that it may constitute a bar. (*Strong* v. *Owens,* 91 Cal.App.2d 336, 339 [205 P.2d 48]; *Steward* v. *Page,* 90 Cal.App.2d 820, 825 [203 P.2d 858].)

It is next contended that the trial court had no jurisdiction over petitioners in the contempt proceedings because a copy of the "Affidavit of Leslie S. Storrs for Order to Show Cause In Re Contempt of Jeanette G. Donovan and John F. Donovan," as amended in court on July 17, 1950, was not served upon either of them. The trial judge permitted an amendment whereby a reference in the affidavit to "Exhibit A," a copy of Ordinance No. 148 of the city of Santa Monica, was stricken. The amendment was made following petitioners' objections that the affidavit as served upon them did not have "Exhibit A" attached.

▇ Petitioners cannot now question the trial court's jurisdiction over their persons inasmuch as both made general appearances, submitting to that jurisdiction, by filing answering affidavits containing various contentions in addition to the objections to service, and by moving to disqualify the trial judge. (See *Judson* v. *Superior Court,* 21 Cal.2d 11, 13 [129 P.2d 361].) Section 170 of the Code of Civil Procedure

limits the right to present disqualification matters to "any party to such action or proceeding *who has appeared therein.*" (Emphasis added.)

█ The trial court had jurisdiction to permit the amendment, and it properly did so. The affidavit pleaded the ordinance elsewhere by referring to its title, number and date of enactment (Code Civ. Proc., § 459), and, in any event, the reference to the exhibit was unnecessary. █ The amendment pertained to an immaterial matter which did not affect the basis for the proceeding, and it was not necessary to serve the amended affidavit on petitioners. (See *Drotleff* v. *Renshaw,* 34 Cal.2d 176, 182 [208 P.2d 969].)

Petitioners further contend that the Honorable Alfred L. Bartlett, who was the trial judge assigned to hear the contempt proceeding, was without jurisdiction to proceed with said hearing because an affidavit for disqualification of the Honorable Orlando H. Rhodes, another judge of the same court, had been filed and had not been disposed of in the manner prescribed by section 170 of the Code of Civil Procedure. This contention appears to be based on a misconception of the proceedings had in the trial court, which misconception is probably due to petitioners' numerous changes of counsel in these proceedings.

Said section 170 provides in part that ". . . the question of the judge's disqualification shall be heard and determined by some other judge agreed upon by the parties . . ." The record before us reveals that when the contempt proceeding came on for hearing before Judge Rhodes on June 16, 1950, a motion was made "to remove cause for disqualification." Judge Rhodes then granted the motion of petitioner John F. Donovan for a continuance to July 17, 1950. On June 30, 1950, petitioner John F. Donovan filed three motions entitled as follows: (1) "Notice of Motion for disqualification of the Honorable Orlando Rhodes"; (2) "Notice of Motion to remove cause for disqualification of the Honorable Orlando H. Rhodes"; and (3) "Notice of motion to transfer the contempt proceeding from Santa Monica Superior Court, Department A to Los Angeles Superior Court, Department 1." All three motions were noticed for July 7, 1950, but only the second notice of motion made reference to the particular department of the superior court in which the motion would be made, stating "and said motion will be made before the Honorable Clarence Kincaid, Department 1, Hall of Records, Los Angeles, California."

The record further discloses the following minute order made on July 7, 1950, in Department 1, with Judge Kincaid presiding: "Plaintiffs' motion to transfer this case from the Santa Monica Branch of the Superior Court to Los Angeles Superior Court, plaintiffs' motion for disqualification of Honorable Orlando H. Rhodes, and plaintiffs' motion to remove cause for disqualification of Honorable Orlando H. Rhodes come on for hearing; Jeanette G. Donovan and John F. Donovan appearing in propria persona, and Royal Sorensen, City Attorney of the City of Santa Monica, by J. Leroy Irwin, Deputy, appearing as counsel for defendants. Motions (3) are denied. Notice waived." Thereafter, notice of the last mentioned order was served by mail on petitioners on July 11, 1950, and the contempt proceeding was heard by Judge Bartlett on July 17, 1950. New counsel, other than petitioners' present counsel, represented petitioners at said hearing and Mr. Sorensen, the city attorney, rather than his deputy, represented the city of Santa Monica. Apparently neither counsel nor the trial judge knew of the order made by Judge Kincaid in the disqualification proceeding. However, petitioner John Donovan's challenge to the jurisdiction of Judge Bartlett to proceed with the contempt hearing was overruled upon the ground that the matter of the disqualification of Judge Rhodes was "moot" as Judge Bartlett, rather than Judge Rhodes, had been assigned to hear that proceeding, and that no question was raised concerning the qualification of Judge Bartlett.

Petitioners' claim that Judge Bartlett was without jurisdiction to proceed with the contempt hearing cannot be sustained. ■ First, petitioners cannot now successfully contend that Judge Kincaid was not "some other judge agreed upon by the parties" to hear the proceeding relating to the disqualification of Judge Rhodes when they voluntarily chose to proceed with their motion for disqualification before Judge Kincaid, and the other parties made no objection. ■ Second, even if it be assumed that no disposition had been made of the proceedings relating to the disqualification of Judge Rhodes, it does not appear that there was a lack of jurisdiction on the part of Judge Bartlett to proceed. The record does not disclose that there was any irregularity in the assignment of Judge Bartlett to hear the contempt proceeding. In fact, an affidavit of Judge Bartlett shows that he was duly assigned by Judge Kincaid, the Presiding Judge, to sit in the

Santa Monica departments of said court from July 17 to September 1, 1950.

█ Subdivision 5 of section 170 of the Code of Civil Procedure contains the following proviso: ". . . provided, however, that when there are two or more judges of the same court, one of whom is disqualified, the action or proceeding may be transferred to a judge who is not disqualified." This proviso was no doubt intended to provide a simple and expeditious method for the disposition by admittedly qualified judges of cases in which claims of disqualification might be made in courts having two or more judges. We are of the opinion that this proviso should be construed to permit the transfer of a cause to a qualified judge of the same court in any case in which a claim of disqualification may be made against one of the other judges, and that its operation should not be confined to cases where actual disqualification has been either admitted or determined after a hearing. (See *Stern v. Stern,* 83 Cal.App.2d 608 [189 P.2d 536].) █ We are further of the opinion that where another judge, who is not disqualified, is assigned to hear the cause in the same department in which it is pending, such assignment comes within the meaning of the phrase "transferred to a judge who is not disqualified," and that no actual transfer to another department is required.

We now turn to a consideration of the contention that the fines of $2,000 and $4,500 imposed on petitioners John F. Donovan and Jeanette G. Donovan, respectively, are excessive and constitute "unusual punishment" within the aforementioned constitutional provisions.

Evidence was presented at the contempt hearing disclosing that John Donovan violated the injunction by actively engaging in renting apartments to persons other than members of his own family after the apartments had been vacated by the previous tenants. He was found in contempt and fined $500 for each of four such contemptuous acts.

The record also discloses that Mrs. Donovan participated in the same four contemptuous acts and that she negotiated for the rental of, and did rent, apartments on three other occasions. In addition, no action had been taken by her toward the removal of apartments from the main structure or the garage, or the reconversion of the main structure into a single-family residence, as required by the injunction. Responsibility for these acts, or omissions, was upon Mrs. Donovan as owner of the property. She was found in contempt and

fined $500 for each of the seven contemptuous acts of renting apartments. She was also found in contempt and fined $500 for failing to remove the apartments from the main structure, and $500 for failing to remove the apartments from the garage.

Section 1218 of the Code of Civil Procedure provides as follows: "Upon the answer and evidence taken, the court, judge or justice must determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding five hundred dollars . . ." The constitutionality of this section was upheld in *In re Garner,* 179 Cal. 409 [177 P. 162].

Said section 1218 does not limit the court to a total fine of $500. Where separate contemptuous acts are committed, the contemner can be fined for each offense in the amount authorized by the code. (*Golden Gate Cons. H. M. Co.* v. *Superior Court,* 65 Cal. 187, 192 [3 P. 628]; *Solano Aquatic Club* v. *Superior Court,* 165 Cal. 278, 279 [131 P. 874]; *In re Shuler,* 210 Cal. 377, 406 [292 P. 481]; *Hume* v. *Superior Court,* 17 Cal.2d 506, 515 [110 P.2d 669]; *Lindsley* v. *Superior Court,* 76 Cal.App. 419, 433 [245 P. 212]; note, 160 A.L.R. 1104.)

Petitioners contend that they were not guilty of separate contemptuous acts, but rather of a single course of conduct for which but one $500 fine could be imposed. However, the trial court could properly consider the several acts of the petitioners—in renting apartments to persons other than members of their own family, in failing to remove apartments from the main structure and to reconvert the same to a single-family dwelling, and in failing to remove the apartments from the garage—as separate contemptuous acts. (See *Solano Aquatic Club* v. *Superior Court, supra,* 165 Cal. 278; *In re Shuler, supra,* 210 Cal. 377; and *Lindsley* v. *Superior Court, supra,* 76 Cal.App. 419.) Each act, or failure to act, considered alone could be the basis for a contempt proceeding.

The trial court, therefore, had jurisdiction to impose a fine not exceeding $500 for each contemptuous act of each petitioner, and, as the court did not impose a fine in excess of that amount for any such act, we cannot hold the aggregate amount of the fines imposed upon petitioners to be excessive. (*Lindsley* v. *Superior Court, supra,* 76 Cal.App. 419, 433-434.)

Petitioners finally contend that there was no showing as to their ability to comply with those portions of the injunc-

tion which directed them to remove certain apartments and reconvert the main structure. Petitioner John Donovan was not found in contempt for this failure, and the argument is not properly made as to him. ■■■ Concerning Mrs. Donovan, the affidavit of Leslie S. Storrs alleged that she had the ability to comply, and the trial judge so found. Mrs. Donovan had the burden of showing her inability. (*Ex parte Spencer*, 83 Cal. 460, 465 [23 P. 395, 17 Am.St.Rep. 266] ; *In re Mason*, 69 Cal.App. 598, 605 [232 P. 157] ; *In re Pillsbury*, 69 Cal. App. 784, 788-789 [232 P. 725] ; and *In re Carpenter*, 36 Cal. App.2d 274, 278 [97 P.2d 476].) Since she made no effort at the contempt hearing to meet this burden, her contention in this regard is without merit. (See *In re Purmel*, 112 Cal.App. 313 [296 P. 644].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J., Concurring.—This opinion follows the law. I must, therefore, concur in it. I am, however, impressed with the idea that the punishment appears to be severe. The record of the unfortunate events which brought the petitioners to their present position indicates that at all times concerned they have been sincere in their belief that they were but asserting rights of private property guaranteed to them by the Constitution of the United States, and that they were led into at least some of their errors by agents, and by acts, of the government which now prosecutes them. Whether they can make a substantial showing in mitigation of punishment can be determined by the court in which a proceeding to that end may be instituted. (*City of Vernon* v. *Superior Court* (1952), 38 Cal.2d 509, 519-520 [241 P.2d 243] ; *City of Vernon* v. *Superior Court* (1952), [L. A. No. 22310], *ante*, p. 839 [250 P.2d 241].)

CARTER, J.—In view of the position taken by Mr. Justice Schauer in his concurring opinion in this case, I cannot refrain from calling attention to a matter that should be obvious, and that is, that it is the view of Mr. Justice Schauer that even though section 1222 of the Code of Civil Procedure provides that judgments and orders of a court, judge or justice, made in cases of contempt are final and conclusive, and that all of the decisions of this Court and of the District Courts of Appeal

of this state dealing with contempt cases so hold, nevertheless after a judgment of contempt has been affirmed, the contemner may institute a proceeding in the court imposing the judgment and there obtain a remission of the punishment. Mr. Justice Schauer cites as his only authority for his position the cases of *City of Vernon* v. *Superior Court,* 38 Cal.2d 509 [241 P.2d 243], and *City of Vernon* v. *Superior Court,* L. A. No. 22310, this day decided (see *ante,* p. 839), of which he is the author. As pointed out in my concurring opinion in the last-cited case, the holding therein is diametrically contrary to the holding of the majority of this court in the case at bar. But if Mr. Justice Schauer is correct in his holding in the City of Vernon case and in his concurring opinion in this case, there can be no finality to a contempt judgment, and section 1222 of the Code of Civil Procedure is a nullity.

I agree with Mr. Justice Schauer that the majority opinion in this case follows the law, and I likewise agree with him that the punishment imposed in this case appears to be severe, but my conscience and respect for the law prevent me from taking the further step with him and holding where a trial court acts within its jurisdiction and exercises its discretion in imposing a judgment of contempt, such judgment may be annulled on certiorari which can only be invoked to test jurisdiction. For this reason, I must concur in the judgment of affirmance in this case which is in direct conflict with the views expressed by the same majority of this Court in *City of Vernon* v. *Superior Court,* L. A. No. 22310, *ante,* p. 839 [250 P.2d 241].